## BETHLEHEM-SPARROWS POINT SHIPYARD, INC. *v.* EDWARD J. GLASS

[No. 138, October Term, 1946.]

*Decided May 16, 1947.*

502

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Jesse Slingluff, Jr.,* and *John S. Bainbridge,* with whom were *Marbury, Miller & Evans* on the brief, for the appellant.

*Herbert L. Grymes* for the appellee.

GRASON, J., delivered the opinion of the Court.

This is a workmen's compensation case. The claimant was awarded compensation by the State Industrial Accident Commission, to be paid by the employer and self-insurer, from which an appeal was taken to the Baltimore City Court. The case was tried before a jury, and from a judgment in favor of claimant for costs, the appeal comes here.

The claimant was employed by the employer in 1932 as a crane operator, and continued in that employment until 1942. Between 1942 and 1945 he was employed as a carpenter. He is at present employed by appellant as a crane operator.

On October 20, 1942, he sustained an accidental injury, arising out of and in the course of his employment. He did not file his claim for compensation for injury resulting from this accident, with the Commission, until January 17, 1946. At the trial of the case below one of the defenses of the appellant was that the injury complained of was not the result of the accident. We need not go into that question, as the main defense was that appellee filed his claim too late, while appellee contends that the claim was filed in

time, and if not so filed appellant is estopped from setting up limitation. Code, 1939, Art. 101, sec. 38, as amended by Laws 1945, c. 528, sec. 2.

There were four issues submitted to the jury: (1) "Did the Claimant sustain an accidental injury to his back on or about October 20, 1942, arising out of and in the course of employment with Bethlehem-Sparrows Point Shipyard, Inc.? (2) Is the disability from which the Claimant is alleged to be suffering from December 10, 1945, to February 24, 1946, the result of an alleged accidental injury sustained on or about Oct. 20th, 1942? (3) If the answer to issue No. 2 is 'Yes,' should the Claimant's injury have become reasonably apparent to the Claimant one year prior to January 17, 1946? (4) Did the injury the Claimant sustained on October 20, 1942, first affect his wage earning capacity in the same employment one year prior to January 17, 1946?" The jury answered the first and second issues "Yes"; the third and fourth issues "No."

The claimant described the accident as follows: "I was holding on to this timber when the timber gave way or slipped forward toward me I went down on my hands and on my knees; I held the timber to keep it from mashing my feet. When I wanted to get up I couldn't hardly get up. I stooped over and that is practically the way I stood for five or ten minutes before I eventually stood up, and I stood up against the cribbing for maybe 15 or 20 minutes more before I could move. The pain went across my legs and back and I couldn't hardly move." The timber that slipped was 32 feet long and 12 by 12 inches.

Peter Monieski was asked: "Q. Who tried to raise one end up, you or Mr. Glass? A. Both of us raised it, and I told him to hold it, and I would put a block under it, and after we got done he put his hand on his back and said his back hurt, and I said you go to the doctor, and after that I don't know nothing."

It is not clear whether the claimant went to the company dispensary on the day of the accident. He did go

the next day, and they strapped his back. He thinks this was on the day following the accident. After they "strapped his back up" he said: "I told them I don't think I could work, I just as soon would go home. No, he said, no, you go back and tell your foreman to give you something light to do, which I did." He does not know the name of the man in the dispensary who told him this. "I never did do too much hard work after that, I couldn't do it, so much lifting, I just had to do what I could do, I never did do any real heavy lifting after that. I did some lifting, but not heavy lifting." Shortly following the accident he had pains in his legs but "maybe a couple of weeks after * * * they eased up." He stayed with the same gang and received the same pay after the accident. He said the pain across his back "never did leave altogether. It eased up at times but as soon as I would pick up something a little heavy again it would just come right back on me and I was back where I started from."

In the summer of 1943 he went to see Dr. Lenhard. The doctor x-rayed him and recommended a back brace. Claimant said the doctor told him that he had a "bad sprained back and probably a ruptured disc, but he wasn't sure." He was told to wear the brace for at least six months. The doctor told him: "You have had this for some time since you sprained your back."

He went to The Johns Hopkins Hospital and was given heat treatment and pills, and in June, 1943, his back hurt him quite a good deal. He was asked: "I notice that there are apparently on the hospital record here that you came in on June 12, 1943, June 28th, July 3rd, July 6th, July 8th and July 13th. So around that time your back was really giving you considerable pain, wasn't it? A. That's right. Q. Did you know what was causing that pain at that time, what had caused that pain? A. I know from the accident what I figured it was from; it was more or less from the first time that I hurt my back that I had the trouble; I never had no trouble like that before."

In 1945 he consulted Dr. Lippy, who sent him to see Dr. Eaton. Dr. Eaton saw the claimant on December 15, 1945. "He could barely walk because of acute severe pain in the lower back and left leg." He gave Dr. Eaton a history of his case. The doctor testified: "According to my notes, three years ago, from a heavy lifting he had severe strain, twisted his low back, and could not straighten up for two months. No sciatic pain. X-rayed by Dr. Lenhard and given a brace, which he has worn off and on ever since. Twelve weeks ago heavy lifting recurrence of acute episode. At the present time a hard bed feels good. He has sciatic radiation with painful cramps in the calf of the left leg on sitting. The pain goes in the left lower back on standing. There is acute left sciatic pain. There is no variation of complaint with the weather or application of heat." Dr. Eaton referred him to Dr. Otenasek.

The claimant was admitted to Mercy Hospital on December 19, 1945, and operated on by Dr. Otenasek on December 21st. The doctor removed a protruding disc, lumbar 5, and a disc of lumbar 4 on the left. There were no complications and the claimant was discharged from the hospital on December 31, 1945. This is shown by the records of the Mercy Hospital, which were offered in evidence. Those records further show that the claimant's history was taken by Dr. Otenasek, and we quote a part of those records as follows: "* * * this 33-year old crane operator was lifting a piece of heavy timber about three years ago when the timber slipped; patient held on to the timber so it would not crush his foot and when he was relieved of it he could not get up because of severe pain in lumbar region. Patient was taken to first aid and there was strapped and was sent back to work. Since then the pain has been more or less with the patient all the time. The pain comes and goes at frequent intervals; at times radiates down back of leg when patient has this pain it radiates down back of legs, occasionally right and then

left, at times as far down as the mid-calf; since the last two weeks pain has increased in severity."

When the claimant was hurt in 1942 his foreman was notified. After an accident in 1945 the head carpenter told claimant that he had orders that any man who couldn't work must go on compensation. Mr. Turner, who was employed by the appellant as a safety man, sent him, with some letters he had gotten from doctors, to a Mr. Maver, who evidently is the carpenter under whom claimant worked. Maver told him: "I don't know what to do * * * but if you can get yourself another job you would be better off." The claimant was released for work on February 23, 1946.

It is, from the evidence in this case, impossible to conceive that the claimant, on October 20, 1942, sustained an injury that was latent. From that date his pain was not trivial. The facts here are entirely different from the facts in the case of *Baltimore Steel Company v. Burch*, 187 Md. 209, 49 A. 2d 542. In that case the injury was latent. In this case the injury was patent. The claimant should have known that he was injured at or about the time of the accident, and certainly, in the summer of 1943, his injury was "reasonably apparent" to him, and he attributed that injury to the accident of October 20, 1942. Under the law it was mandatory upon him to file his claim with the Commission, certainly within one year from the summer of 1943, when his injury, by uncontradicted testimony in this case, was known or should have been known by him. *Vang Construction Co. v. Marcoccia*, 154 Md. 401, 140 A. 712; *West Virginia Pulp & Paper Co. v. Morton*, 185 Md. 623, 45 A. 2d 725, 727; *Griffin v. Rustless Iron & Steel*, 187 Md. 524, 51 A. 2d 280; *Dunstan v. Bethlehem Steel Co.*, 187 Md. 571, 51 A. 2d 288.

The testimony in the case, and all rational inferences to be drawn therefrom, was clear and uncontradicted that the claimant knew, and it was reasonably apparent to him in the summer of 1943, that his injury was caused by the accident on October 20, 1942. Under this

state of the proof, a question of law was presented to the court. On the question of whether or not the claim was filed in time, the uncontradicted testimony in the case shows that it was not so filed. The court, therefore, should have granted appellant's motion to instruct the jury to answer issues three and four "Yes." *Vang Construction Co. v. Marcoccia, supra; West Virginia Pulp & Paper Co. v. Morton, supra; Griffin v. Rustless Iron & Steel, supra; Dunstan v. Bethlehem Steel Co., supra.*

It is not contended that appellant induced the claimant not to file his claim in time, by fraud or artifice, but it is suggested that its action amounts to estoppel, and that it is prevented from pleading limitation. The action relied on to constitute estoppel occurred more than one year after it was reasonably apparent to the claimant that his injury resulted from the accident of October, 1942. The facts relied on to constitute estoppel are: 1. That an unknown person in the dispensary told the claimant, when he was taken there on the day after the accident, to "go back and tell your foreman to give you something light to do," which he did. He told this unknown person, "I don't think I could work, I just as soon would go home." 2. What Maver, the carpenter, said to him, namely: "I don't know what to do, Ed. * * * but if you get yourself another job you would be better off." This does not constitute estoppel. *West Virginia Pulp & Paper Co. v. Morton, supra; Griffin v. Rustless Iron & Steel, supra; Dunstan v. Bethlehem Steel Co., supra.*

Claimant further contends that he did not have a compensable claim because he was employed thereafter at the same wages.

We stated in *Griffin v. Rustless Iron & Steel, supra* [51 A. 2d 283] : "* * * the right to file a claim does not depend in this State upon whether the claimant lost any wages. It can be based upon a loss of function which may be a deterrent from or a denial of future promotion or future employment." See cases there cited.

508

In *Allen v. Glenn L. Martin Co.*, 188 Md. 290, 52 A. 2d 605, 610, we said: "* * * we have repeatedly held, the Commission may find impairment of earning capacity, *i.e.*, potential loss of earnings, although no actual loss of earnings may have occurred."

> *Judgment reversed and case remanded for the entry of a judgment reversing the decision of the State Industrial Accident Commission, with costs to appellant.*