CHAMPNESS *v.* GLENN L. MARTIN CO. ET AL.

[No. 154, October Term, 1948.]

*Decided May 19, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Leonard S. Bernstein,* with whom were *Bernstein & Shapiro* on the brief, for appellant.

*Daniel E. Klein,* with whom was *Donald F. Aubrey* on the brief, for appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a case arising under the Workmen's Compensation Law. The question is whether there was enough evidence to justify the uninstructed submission to the jury of the issue whether the claimant filed his claim within the time required by law. The State Industrial Accident Commission found he did not so file, and, on appeal, the judge sitting in the Superior Court of Baltimore directed the jury to answer the issue "no," and affirmed the ruling of the Commission. The claimant appeals here.

The claimant was employed at the Glenn L. Martin Company plant at Middle River. In 1943 he was there engaged in shredding blue print paper. The dust incident to the operation irritated the claimant's respiratory system, and he visited his employer's dispensary for treatment of what he then thought was a cold. In February, 1944, he went to see a neighborhood physician, who referred him to a nose specialist. The latter told him his tissues were badly damaged. This information was conveyed by claimant to his foreman and to the hospital personnel at the plant hospital. The doctor at the hospital sent him to another nose specialist in Baltimore. He was treated by the latter until some time in the latter part of April when he was discharged, and told to purchase a spray for the further treatment of his nose. These expenses were all paid for by the employer's insurer.

Claimant knew that claims were filed at the plant hospital, and shortly after his discharge by the specialist, he received a call to go to the hospital, and was there asked by one of the personnel, called by him a "secretary" to sign a statement to the effect that he "thought" his

injury came from his work. He insisted that he "knew" it came from his work, and would not sign the paper because of the wording used. In the latter part of May, or early June, 1944, he was again called to the hospital and interviewed by a claim adjuster for the insurer. It is what is claimed to have been told him by the adjuster that constitutes the basis of claimant's contention that he was prevented by facts amounting to an estoppel from filing his claim within the one year fixed by the statute. Claimant was advised by his own nose specialist that it was necessary for him to take continuous treatment to avoid ulceration, and, since June, 1944, he has been a regular patient for that purpose, visiting the physician on the average of every six or seven weeks. He lost no time from his work, but was placed on light duty. On May 7, 1947 he was discharged. He then visited the offices of the State Industrial Accident Commission, found he had no claim on file, and, on May 8, 1947 made out and signed the claim form which became the basis of this case.

The statute, Code Supp. 1947, Article 101, Sec. 38 (formerly Code 1939, Art. 101, Sec. 51), provides that if a claim is not filed within one year after the beginning of disability, failure to do so "shall constitute a complete bar" unless such failure was induced or occasioned by fraud or by "facts and circumstances amounting to an estoppel." In the latter case, the claim may be filed within one year from the time the facts and circumstances amounting to an estoppel cease to operate. No fraud is claimed here, the claimant knew he had the disability nearly three years before he filed his claim, and, therefore, the point before us is whether there is sufficient proof of facts and circumstances, amounting to an estoppel, to permit the issue to be submitted to the jury. This is largely a factual question, which must be considered with all favorable inferences in favor of the claimant.

We have passed upon the statute in several cases. In *Parks and Hull Appliance Corporation v. Reimsnyder,*

177 Md. 280, 9 A. 2d 648, officials of the employer dissuaded the employee from filing a claim, stating they would do something for him, and misleading him about the necessity of filing with the Commission. We held this constituted an estoppel. In *Harrison v. McCarty,* 178 Md. 377, 13 A. 2d 544 the employer, at the doctor's office, told the employee that "everything was fixed up as far as his part was concerned" and instructed him to carry out the doctor's orders. The doctor told the employee he should wait for a year to determine the extent of his disability. He obeyed instructions, and we held the facts and circumstances there amounted to an estoppel, and that the employee could file his claim after the year had expired. In *West Virginia Pulp & Paper Co. v. Morton,* 185 Md. 623, 45 A. 2d 725, we held that an assurance given the employee by his superintendent that his claim would be taken care of did not amount to an estoppel, because the superintendent had no apparent or real authority to bind the employer, and the employee knew there was a man at the plant, representing the employer, whose duty it was to make out compensation claims. In *Griffin v. Rustless Iron & Steel Co.,* 187 Md. 524, 51 A. 2d 280, 282, we held that a plant safety engineer had no power to bind the employer, and the engineer's statement that "we are going to look after you" did not constitute an estoppel. We construed it to refer to medical care. And in *Dunstan v. Bethlehem Steel Co.,* 187 Md. 571, 51 A. 2d 288, 290, the doctors' assurances that claimant's knee "would be all right" did not constitute an estoppel, as they were not authorized to give advice on claims for compensation, and, in fact, gave none.

These cases show that, to bind an employer (or an insurer), the facts and circumstances must be produced, either by one of the principals or by an agent who has real or apparent authority to speak for the principals in compensation matters. It is not sufficient that such an agent is a plant foreman or an engineer. He must have the authority to represent the employer in the specific matter of filing claims, or he must be in a position which would

reasonably result in an inference that he has such authority.

In the case before us, the agent was what the claimant called a "claim adjuster." He took a statement from the claimant, and according to the latter, told him "he would put in a claim" and claimant did not have to worry, that everything would be taken care of. This remark was made, according to the testimony of the claimant, after the latter had refused to sign the statement at the hospital (where he knew claims were made out), and claimant neither signed nor made affidavit to any paper presented to him by the claim agent. He said he did not think that the agent had signed his name and sworn to it. He was emphatic in his statement that Mr. Flater (the agent) would not do that. He did not see the agent after that, and made no inquiry about the matter for nearly three years.

When Flater testified, he said that he could not remember the exact conversation, because there were forty-five thousand people in the plant, and he had talked with thousands of them. He stated that the purpose of his discussion with the appellant was "apparently to obtain a medical report concerning his complaint." Flater, at that time, was an investigator for the insurer. His duty was to investigate claims. He did not make out claim forms. There were personnel counsellors in the hospital for that purpose. It was not part of his job to fill out a claim for the appellant for any compensation claims. He had no recollection of every having filled out such a form for a claimant.

Appellant contends that in spite of the lack of actual authority, the claim agent had apparent authority because he was investigating claims. But it would be a dangerous precedent to permit any person investigating claims to bind the employer or the insurer by such loose statements as the one testified to in this case. The appellant knew the place provided for the filing of claims, had been there, and he knew he had not signed any claim. In fact he had, apparently, refused to sign one. He worked for nearly three years because he said he con-

sidered his wages sufficient compensation. He did not even ask to have his doctor's bills paid by the employer or the insurer, and only filed his claim after he lost his job. Under these circumstances we do not think he produced sufficient evidence of an estoppel to permit the jury to consider it. The fact that his employer knew and admitted that he was injured while working at the plant, would not give rise to an inference that he was prevented from filing a claim, nor does the mere keeping him at work prevent such filing. *Griffin v. Rustless Iron & Steel Co., supra,* 187 Md. 531, 51 A. 2d 280. An employee might (and this one did) consider that his job was enough compensation. He cannot take this attitude for nearly three years, and then file his claim, unless there has been some arrangement with the employer which prevents it. There is no evidence in this case that there was any such arrangement, and we think the appellees are entitled, under the circumstances, to rely upon the one year provision in the statute. Filing of a claim, within time, unlike the notice of a claim, cannot be excused by the State Industrial Accident Commission, and failure to do so is a "complete bar".

The appellant also contends that evidence should have been admitted that another employee, injured at the same time as he was, filed a claim form through the insurer before it was delivered to the State Industrial Accident Commission. This was shown by a stamp on the claim, and the appellant claims that this is evidence of a general or standard operating procedure. We do not think it can be so construed, but if it can, that does not affect appellant's case. He did not use this general method and filed no claim at all which might have been stamped. The evidence refused does not tend to prove in any way that the insurer or any of its agents prepared any claims for the employees, which is what appellant is claiming was promised in his case. The evidence was properly rejected.

The order will be affirmed.

*Order affirmed with costs.*