## SUMMIT TIMBER PRODUCTS CO., INC., ET AL. *v.* McKENZIE

[No. 176, October Term, 1952.]

42

*Decided July 2, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William C. Walsh* and *Thomas B. Finan*, with whom were *Miles, Walsh and Stockbridge* on the brief, for appellants.

*Edward J. Ryan* and *William L. Wilson*, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Allegany County reversing an order passed by the State Industrial Accident Commission, which disallowed the appellee's claim for compensation for the reason that it had not been filed within one year

after the beginning of disability, as required by Code, 1951, Article 101, Section 38.

On November 25, 1949, the appellee and claimant, Raymond F. McKenzie, sixty-seven years of age, while employed by the Summit Timber Products Company, Inc., one of the appellants, was struck on the wrist by a falling pole or tree while within the scope of his employment. His claim for compensation having been denied by the Commission, he appealed to the Circuit Court for Allegany County. The case was tried by the trial judge and a jury who rendered a verdict and judgment reversing the decision of the Commission. From that judgment the employer and insurer appeal.

The appellants claim that there was not sufficient evidence to justify submitting to the jury the question of whether the failure of the appellee to file his claim within the time provided by the statute was induced or occasioned by facts or circumstances amounting to an estoppel of the appellants to avail themselves of such failure; and further that there was not sufficient evidence to justify the submission to the jury of the question whether Leroy Hessen, the superintendent, had authority to bind his employer by his statement about looking after everything for the appellee in connection with the alleged injury. Code, 1951, Article 101, Section 38, *supra*, provides that if a claim is not filed within one year after the beginning of disability, failure to do so "shall constitute a complete bar", unless such failure was induced or occasioned by fraud or by "facts and circumstances amounting to an estoppel". The appellee claims such an estoppel.

The only testimony in the case is that of the claimant and his wife, Lula McKenzie. The claimant testified as follows: He had worked for the employer for about two years cutting logs with an axe and saw and was also a boss and timekeeper. He said he was employed by Leroy Hessen, who was supposed to be superintendent over all the work of the Summit Timber Products Company. He knew nothing about this company except he

was told that it was located in Uniontown, Pennsylvania. Mr. Hessen gave him his pay checks, showed him where to cut and what to cut, what days to work and what hours to work. He knew no one else in connection with the company other than Mr. Hessen. There was no one "higher than he on the job". He testified further that he was to report to Mr. Hessen in the event of an accident. On November 25th he was hit on the wrist with a dry pole or old dry tree while cutting logs. He went to see Dr. Hoke in Salisbury, Pennsylvania, the next day. Mr. Hessen did not come out in the woods to the job until Monday, November 28th, when he told Mr. Hessen about the accident and that he had better report it. To this Mr. Hessen replied: "Never mind, Raymond, I'll take care of everything." After the injury to his wrist on November 25th he was unable to cut logs and from that time until January 1, 1950, when the work stopped in the woods, he acted only as boss and time-keeper. He went to see Dr. Hoke about every two weeks at the direction of Leroy Hessen. The claimant paid Dr. Hoke each time. When the work stopped in January he returned to his home near Avilton, Maryland. During the latter part of March or first of April, 1950, Mr. Hessen went to appellee's home and asked him to go back to work. He told Mr. Hessen that he could not go back to work and showed him his hand which was swollen. Mr. Hessen then said to him: "That is too bad. I'll take care of it for you. I'll turn everything in for you." About the tenth of April Mr. Hessen came to his home for the time book. He talked to the claimant and said to him: "Raymond, you have a bad hand and arm there and you had better go to the hospital." Mr. Hessen further said: "You ain't got nothing to worry about, Raymond, I'll take care of everything." He did not say that he had filed the claim for him, nor did he say that he had not filed it. That was the last he saw of Mr. Hessen. He further testified that he had never seen anyone else who had any authority to act for the company, had never been to the office of

the company, did not know on what street in Uniontown the office of appellant was located, and did not know any of the people connected with the company except Mr. Hessen. About the first of April he started going to see Dr. John B. Davis, of Frostburg, Maryland. Sometime about November 18, 1950, he went to see his attorney, because "I didn't get no results from no one else. Didn't hear from any one." He therefore knew that "they didn't turn it in." No one sent him to see Dr. Davis. He said he did not consult his attorney previous to November, 1950, because he depended upon Mr. Hessen "doing the right thing for me." He depended upon Mr. Hessen because "he was the one that said if anything went wrong I should notify him and he'd take care of anything. I depended on him." The claimant had reached the sixth grade in school. Dr. Davis in April diagnosed his trouble as blood poisoning. Claimant further said he wanted compensation. He wanted to file his claim and "they never fetched me no papers to file it. I didn't know where to file it or anything." He thought Mr. Hessen "would take care of everything. He was good to me and I trusted him for everything."

Lula McKenzie, the wife of the claimant, testified that she recalled the occasion when her husband was hurt in 1949. His hand started to swell in April, 1950, and he then went to Dr. Davis. She further testified that Mr. Hessen came to see her husband in March and he wasn't able to go back to work on account of his hand. She thinks Mr. Hessen was at their house on three occasions. On each occasion her husband asked Mr. Hessen "to turn the accident in" and Mr. Hessen promised faithfully to do so. He said: "I'll take care of everything, Raymond. Don't you worry about a thing." He spoke these words each and every time. On April 10th, when Mr. Hessen arrived at their home the claimant had his hand in a tub of hot water and Mr. Hessen said: "You've got an awful bad hand, you'd better go down to the hospital." Raymond asked

him as he left: "Would you kindly turn this in for me. I'm down and out and can't do nothing," and Mr. Hessen replied: "I'll look after everything." She said she and her husband came to the attorney's office because "we were down and out and we had no money and he had never got any money and I wanted help from somebody. That is why we came." She thought her husband was entitled to compensation.

When the claimant's attorney wrote to the employer on November 18, 1950, at the time the claimant came to see him and one week before the year expired, concerning the injury suffered by the claimant in November, 1949, he was not advised that appellee's claim had not been filed but that it had "forwarded a copy of your letter to our insurance carrier." The claim was filed with the Commission on January 2, 1951.

In *West Virginia Pulp & Paper Co. v. Morton,* 185 Md. 623, 45 A. 2d 725, relied on heavily by the appellants here, an assurance was given the employee by his superintendent that his claim would be taken care of. However, the employee knew there was a man at the plant who represented the employer and whose duty it was to make out compensation claims. We held that this representation did not amount to an estoppel because the superintendent had no apparent or real authority to bind the employer by this representation. In *Griffin v. Rustless Iron & Steel Co.,* 187 Md. 524, 51 A. 2d 280, 283, the plant safety engineer made the statement "we are going to look after you." We held there that the engineer had no power to bind the employer and his statement did not constitute an estoppel but referred only to medical care. In *Dunstan v. Bethlehem Steel Co.,* 187 Md. 571, 51 A. 2d 288, 290, the doctors assured the claimant that his knee "would be all right". We held that this did not constitute an estoppel as the doctors were not authorized to give advice on claims for compensation and really gave none. In *Bethlehem-Sparrows Point Shipyard v. Glass,* 188 Md. 501, 53 A. 2d 405, it was held that representations made by one

working in the employer's dispensary could not bind the employer. In *Champness v. Glenn L. Martin Co.,* 193 Md. 188, 66 A. 2d 396, 399, a claim adjuster took a statement from the claimant and told him "he would put in the claim", and that he did not have to worry and everything would be taken care of. He did not see the claim agent after that and made no inquiry for nearly three years. We held that this did not constitute an estoppel because the claimant knew that claims were filed at employer's plant hospital and on prior occasions, while at the hospital, he refused to sign the claim and, further, did not file his claim until three years after the accident.

In *Parks & Hull Appliance Corp. v. Reimsnyder,* 177 Md. 280, 9 A. 2d 648, officials of the employer persuaded the claimant not to file a claim, stating that they would do something for him and misled him about the necessity of filing the claim with the Commission. This was held to constitute an estoppel. In *Harrison v. McCarty,* 178, Md. 377, 13 A. 2d 544, we held that an estoppel existed where the employer, at the doctor's office, told the employee that "everything was fixed up as far as his part was concerned" and told the claimant to carry out the doctor's orders. He obeyed the instructions of the doctor who told the employee to wait for a year to determine the extent of his disability. In *Webb v. Johnson,* 195 Md. 587, 74 A. 2d 7, we held that an estoppel existed where the employer told the claimant that he would take care of all matters and was sure the insurance company would pay him for his injuries, hospital expenses, doctors' bills and "all" and all would be taken care of as the empoyer was working out a settlement with the insurance company and that he had nothing to worry about.

From these cases it may be concluded that facts and circumstances to create an estoppel under this statute must be produced either by a principal or an agent who has real or apparent authority to speak for the principal in compensation claims. The mere fact that

such an agent is a plant foreman or an engineer is not sufficient. He must have authority to represent the employer in the specific matter of filing claims or he must be in a position which would reasonably create in the mind of the claimant an inference that he had such authority. *Champness v. Glenn L. Martin Co., supra,* page 193, 66 A. 2d at page 398.

In the case now before this Court the only person connected with the company known and seen by the claimant was the superintendent, Mr. Hessen. He issued all instructions to the employees, ordered them when and where to work and paid them. The location of appellant's office was not known to claimant other than he had heard it was in Uniontown, Pennsylvania. The claimant had never seen or heard of anyone connected with the company other than Mr. Hessen and instructions from him were considered as instructions from the company. There was direct testimony from the claimant that he was to report to Mr. Hessen in the event of an accident. There was no testimony that Mr. Hessen did not have authority to handle Workmen's Compensation claims for the appellants and file those claims and that he did not have authority to make the representations, which it is not denied that he made to the appellee. The circumstances here proven, and the undenied representations made by Mr. Hessen, repeatedly, that he would take care of everything; would take care of the matter for the claimant, and turn everything in, and that claimant had nothing to worry about, appear to be sufficient to justify a jury in inferring from the evidence before them that the failure of the appellee to file his claim within the one year period was induced or occasioned by facts and circumstances amounting to an estoppel of the appellants to avail themselves of such failure, and further that Leroy Hessen had apparent authority to bind his employer by his statements.

It was of course not the duty of the court to determine whether appellants were estopped in this case, but

simply whether there was sufficient evidence to allow the jury to determine that question. The judgment will be affirmed.

*Judgment affirmed, with costs.*