## MUTUAL CHEMICAL COMPANY OF AMERICA
### ET AL. *v.* PINCKNEY

[No. 169, October Term, 1953.]

108

*Decided June 24, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Philip T. McCusker,* Special Attorney for State Accident Fund, with whom were *Edward D. E. Rollins,* Attorney General, and *Harry A. Cole,* Special Attorney for State Accident Fund, on the brief, for appellants.

*Amos I. Meyers,* with whom was *W. Wallace Rhynhart,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment in a Workmen's Compensation case.

The appellee, Gads B. Pinckney, a laborer, was employed by the Mutual Chemical Company of America, (Mutual), one of the appellants. On October 29, 1951, he filed a claim with the State Industrial Accident Commission, (the Commission), for permanent injury to his nose, claiming that he was disabled but had lost no time from work. He claimed that this was due to an accident or disease which occurred on November 25, 1950. The case was set down for hearing before the Commission on May 6, 1952. The issues presented were: "1. Mutilation and disfigurement. 2. Nature and extent of disability. 3. Whether the claim is barred by limitations prescribed by Article 101 of the Code of Public General Laws of Maryland."

It was stipulated and agreed that there was no medical issue; that the appellee had a perforated nasal septum; that this perforation occurred while at work for Mutual; and that the Commission would decide the issues. At the hearing before the Commission the appellee testified that he was employed by Mutual from May 29, 1947, until January 5, 1948, when he was discharged. After that date appellee testified that he contracted for jobs, working for himself. When asked whether he knew,

while he was employed by Mutual, that he had a hole in his nose, he replied: "I didn't know exactly a hole was in there but my head was burning and the doctor gave me some grease and told me to wash it out every day with hot water and to grease it with blue seal vaseline, and he said pure air would finally be the cure, it wouldn't be anything to it." He said he did not lose any time while working at Mutual and that he did not find out that he had the hole in his nose until October 26, 1951, three days before the claim was filed with the Commission. When asked how this condition had affected his ability to work, he replied: "I can't work unless I work for myself, I can't get another job anywhere on account of my head giving me trouble." When asked whether he could "breathe all right", he replied: "It is a little hard, * * * the least bit of heat I go into it just puts me on fire, I can't work around dry heat or dust." He said he could not work again at Mutual. On cross-examination he stated that he knew something was wrong with his head before his employment with Mutual terminated. When asked how soon after he left Mutual he found out about his nose, he replied: "Practically the first day, they let me know, they said, your head is going to give you a little trouble, and to wash it out and it would be all right, but I still didn't pay no attention to it about it being a hole." He first discovered the hole in his nose on October 26, 1951, when he was washing "up there, I had a hole, I pushed a piece of paper up. * * * I found it out for myself and then I done something about it." He further said his nose had given him "trouble" ever since he left the employ of Mutual, and "gave me trouble all along". He had an "ache in my head and nose burned and burned." When asked what he thought caused his trouble, he replied: "I know I got it from that chemical, working in that filter and boiling steam, * * * and I went to the dispensary, and when I kept on complaining about my head he said it would be all right." When asked why he did not do something about his claim before the year

expired, he replied: "He told me it would be all right in about a year. * * * Well, I thought it was like these spots on my hands, they went away, I thought that was all it was to it, I thought it would get all right, all them spots they kind of cured up, but they are on the outside, on the inside it didn't clear up."

Mr. John F. Williams, who was assistant to the personnel director of Mutual, testified that from the records of the medical department of Mutual, appellee had a perforated nasal septum on October 13, 1947. Appellee visited Mutual's dispensary thirteen times between June 3, 1947, and October 13, 1947. Mr. Williams said the records showed: "He had a perforated nasal septum on October 13th, made a specific nose visit, January 5th, 1948, nasal septum perforated, man was terminated [discharged] and note on other card, November 20th is same note—perforated nasal septum; and also on January 5th, 1948, cleared, nasal septum perforated, dry, not irritated, and that was signed by the nurse." Appellee was never seen by a physician, his treatments were all handled by the "First Aid man". When asked on cross-examination: "Who is this crippled man he speaks of?" he replied: "That is the First Aid man." To the question: "You don't know whether or not the First Aid man or the doctor or who it was told this man he would be perfectly all right if he put vaseline in his nose, he would get all right?" he answered: "That is right, I said I didn't know that."

The Commission found that appellee's claim was not filed within the time prescribed by the Workmen's Compensation Law of Maryland, and disallowed it. The claimant took an appeal to the Superior Court of Baltimore City. The case was tried before the trial judge and a jury on the testimony given before the Commission. One of the issues submitted to the jury was "Did the Claimant file his claim within the time permitted under the Workmen's Compensation Law of Maryland," to which it answered "Yes". From the refusal of appellants' motion for a judgment *n.o.v.* and from a judgment

in favor of the appellee, the appellants, the employer and insurer, appeal to this Court.

One of the grounds relied on in the motion for a judgment *n.o.v.* was that the claim was not filed within the time prescribed by law. The claimant's rights are governed by the statute at the time of the injury and not as of the time of filing the claim. *Meyler v. Baltimore*, 179 Md. 211, 17 A. 2d 762; *Furley v. Warren-Ehret Co.*, 195 Md. 339, 73 A. 2d 497.

It was admitted in this case that the injury complained of was the result of an occupational disease, "Chrome ulceration or dermatitis or their *sequelae.* Any process or occupation involving the use of or direct contact with chromic acid or bichromate of ammonium, potassium or sodium, or their preparations." This was listed as an occupational disease under Code, (1947 Cumulative Supplement), Article 101, Section 21, relied on by the appellee. Article 101, *supra*, Section 22, provided in part: "Where an employee * * * suffers from an occupational disease, as hereinbefore listed, and is thereby disabled from performing his work in the last occupation in which he was injuriously exposed to the hazzards of such disease * * * the employee * * * shall be entitled to compensation in the amount and payable in the manner provided elsewhere in this Article, as if such disablement * * * were an injury by accident * * *." Article 101, *supra*, Section 35 (3) provided as to benefits: "Disfigurements—For other mutilations and disfigurements not hereinbefore provided for, compensation shall be allowed in the discretion of the Commission, for not less than ten weeks nor more than one hundred weeks, as the Commission may fix, in each case having due regard to the character of the mutilation and disfigurement as compared with mutilation and injury hereinbefore specifically provided for." Article 101, *supra*, Section 26, provided, among other things: "* * * If no claim for disability or death from an occupational disease be filed with the State Industrial Accident Commission within one (1) year from the date of disablement or death, as

the case may be, the right to compensation for such disease shall be forever barred. * * * Notice or claim shall be deemed waived in case of disability or death when the employer or insurance carrier makes compensation payments therefor, or within the time above limited, the employer or insurance carrier by his or its conduct leads the employee or claimant reasonably to believe that notice or claim has been waived by his or its affirmative conduct." Article 101, *supra*, Section 67 (15) provided in part: " 'Disablement', as used in Sections 21, 22, 27, 28, and 29 of this Article, means the event of an employee's becoming actually incapacitated, either partially or totally, because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease; and 'disability' means the state of being so incapacitated." Article 101, *supra*, Section 38, does not apply in occupational disease cases. *Consolidation Coal Co. v. Porter*, 192 Md. 494, 499, 500, 64 A. 2d 715.

As to appellee's claim that he was advised that his nose would be all right within a year, he does not know who told him this, whether it was the First Aid man or a doctor. In *West Virginia Pulp & Paper Co. v. Morton*, 185 Md. 623, 45 A. 2d 725, the employee claimed that the corporation was estopped from setting up the bar of the statute because he was told by his department superintendent that "they would take care of my claim and take care of that if any claim was to be filed." In denying that such an estoppel existed, this Court said: "It needs no authority for the statement that an agent of a corporation can only bind his principal within the scope of the authority delegated to the agent, or in cases where the doctrine of apparent authority applies." See also *Griffin v. Rustless Iron & Steel Co.*, 187 Md. 524, 51 A. 2d 280; *Bethlehem-Sparrows Point Shipyard v. Glass*, 188 Md. 501, 53 A. 2d 405; *Champness v. Glenn L. Martin Co.*, 193 Md. 188, 66 A. 2d 396; *Webb v. Johnson*, 195 Md. 587, 74 A. 2d 7; *Summit Timber Products Co. v. McKenzie*, 203 Md. 41, 97 A. 2d 910.

In the instant case there is nothing to show the authority of the person who made the alleged statement nor can we find anything in the statute which excuses an employee from filing a claim with the Commission merely because he has been told that he will recover from the disease or injury. In *Dunstan v. Bethlehem Steel Co.,* 187 Md. 571, 51 A. 2d 288, in which it was found that the employee's claim was barred by limitation because it was not filed within one year after the beginning of his disability, this Court said: "To establish either (1) 'the beginning of his disability' or (2) an estoppel, he relies on the fact that in September, 1943, and in January, 1944, the doctors at the dispensary told him his knee 'would be all right' and in January, 1945, told him 'it wouldn't be all right.' Meanwhile he knew the knee was troubling him all the time in the same way—and gave no sign that it would cease to trouble him. On the day of the accident, and certainly in January, 1944, his injury was not latent or trifling but apparent—and was apparently permanent. *Cf. New England Mutual Life Ins. Co. v. Hurst,* 174 Md. 596, 605-612, 199 A. 822. He then knew or should have known that his disability, whether permanent or temporary, was compensable. The beginning of his disability, therefore, was not later than January, 1944, and his failure to file his claim within one year thereafter is a bar. Such a prognosis by the doctors at the dispensary, if mistaken or misunderstood, would not amount to an estoppel which induced or occasioned his failure to file in time. The doctors' duty was to treat injuries and give medical advice. They were not authorized to give advice as to claims for compensation, were not asked for such advice and gave none." It is admitted that whatever disability or mutilation the claimant here suffered arose out of and in the course of his employment by inhalation of chemical fumes which caused the occupational disease and that the occupational disease caused the mutilation, or hole in his nose. The appellee in his brief states: "The claim in this case is based upon

an occupational disease suffered by the Claimant, resulting in a perforated nasal septum. The occupational disease in question is covered by Article 101, 1947 Supplement, Code, Item 19, Section 21, namely, Chrome ulceration or dermatitis or their sequelae." Section 26, *supra,* does not fix the date of limitation to run from the time the full extent of the disability is known, but from the time claimant was disabled. Although the claimant might not have known the full extent of his disability by reason of this inhalation, he admits that when he was discharged by Mutual on January 5, 1948, he knew something was wrong with his nose, that this had been giving him trouble ever since, and he knew this was caused by the chemicals, and that he could not work in chemicals after that time. The only excuse he gives for not reporting his claim was because he was told that "it would be all right in about a year." In *Consolidation Coal Co. v. Porter, supra,* this Court said: "We agree that the words of the statute now in question mean in the case now before us that limitations as to notice to the employer, and as to the time of filing of the claim, Article 101, Section 26, *supra,* started to run in this occupational disease case from the time the employee or some one in his behalf knew or had reason to believe that he was suffering from an occupational disease and that there was a causal connection between his disability and occupation, which was January, 1947."

As in the case of *Dunstan v. Bethlehem Steel Co., supra,* when the appellee was discharged by Mutual he knew that his nose was troubling him and that this was caused by the chemicals there. This trouble with his nose gave no sign that it would cease. His injury was not latent or trifling, but prevented him from further work at Mutual or at any other place, except working for himself. When he was discharged by Mutual he knew or should have known that his disability, whether permanent or temporary, was compensable. The only thing that the appellee did not know when he was discharged from his employment and until 1951, was that

there was a perforation. If claimant had any compensable disability at all, it was because of an inability to work for Mutual. His knowledge of his inability to continue working for Mutual was as great in 1948 as in 1951.

As the appellee admitted that he knew his "trouble" was caused by his occupation when he was discharged by Mutual on January 5, 1948, and he could not work there any longer; as his claim was not filed within one year from that date; as the only excuse he gives for not filing his claim within the year was because of the statement made to him at Mutual's dispensary, and as this excuse was not sufficient to create an estoppel, *Dunstan v. Bethlehem Steel Co., supra;* there were no controverted or disputed facts to be passed upon; the case should not have been submitted to the jury; and the motion for a judgment *n.o.v.* should have been granted. *Griffin v. Rustless Iron & Steel Co., supra; Dunstan v. Bethlehem Steel Co., supra; Bethlehem-Sparrows Point Shipyard v. Glass, supra.* Finding that the claim is barred by limitations, it is not necessary that we decide in this case whether a perforated nasal septum is a disfigurement or mutilation. See *Coca-Cola Bottling Works v. Lilly,* 154 Md. 239, 140 A. 215; *Bethlehem-Sparrows Point Shipyard, Inc. v. Damasiewicz,* 187 Md. 474, 481, 50 A. 2d 799; *Southern States Marketing Cooperative v. Lippa,* 193 Md. 385, 67 A. 2d 244; *Smith v. Revere Copper & Brass,* 196 Md. 160, 76 A. 2d 147. The judgment will therefore be reversed and the case remanded.

*Judgment reversed, with costs, and case remanded.*