BAYSHORE INDUSTRIES, INC. *v.* ZIATS

[No. 323, September Term, 1962.]

168

*Decided June 28, 1963.*

The cause was argued before BRUNE, C. J., HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*Donald L. Merriman,* with whom was *Merriman & Merriman* on the brief for appellants.

*Floyd J. Kintner,* with whom was *Kintner & Evans* on the brief for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The main question which the parties present on this appeal (to which the others raised are subsidiary) is whether or not

the appellee's claim for compensation under the Workmen's Compensation Act is barred by limitations because it was not filed in due time. This question was decided by the Workmen's Compensation Commission and by the trial court, sitting without a jury, in favor of the claimant, and the employer and its insurance carrier appeal from the order of the Circuit Court for Talbot County confirming this finding of the Commission.

This case is a companion case to *Bayshore Industries, Inc. v. Ziats,* 229 Md. 69, 181 A. 2d 652, and on the basis of our opinion in that case the trial court in this case set aside the findings of the Commission on issues 1-4 and remanded them to the Commission for further hearing after due notice to all interested parties.

Under Code (1957), Art. 101, § 39, which was in force at the time when the accident here involved occurred and until after the filing of the appellee's claim, provided by paragraph (a) that the "failure of an employee to file a claim for compensation within eighteen months from the date of the accident shall constitute a complete bar to any claim under this article;" but paragraph (c) states an exception to this rule in case of fraud or estoppel. It provides:

> "When it shall be established that failure to file claim by an injured employee * * * was induced or occasioned by fraud, or by facts and circumstances amounting to an estoppel, claim shall be filed within one year from the time of the discovery of the fraud or within one year from the time when the facts and circumstances amounting to an estoppel cease to operate and *not afterwards.*"

The injury for which the appellee sought compensation occurred on October 8, 1957, but her claim was not filed with the Commission until October 14, 1959, which was a little more than six months after the expiration of the eighteen months' period allowed by paragraph (a) of § 39, *supra.* The appellee claims the benefit of paragraph (c) of that section. The Commission upheld her claim on the basis of estoppel. The Circuit Court rejected estoppel, but upheld her claim on the

ground of duress, which it considered to amount to a kind of fraud.

The accident occurred when a solution with which the appellee, Mrs. Ziats, was cleaning off a newly manufactured toy in the course of her work for Bayshore Industries, Inc., the employer-appellant, splashed in her eye. It caused immediate injury, for which the appellee promptly consulted a doctor. The latter sent his bill to the employer; and upon its receipt a few days after the accident, a Mr. Pinkowski, an employee of Bayshore and Mrs. Ziats' superior in the company, telephoned to her and stated that Bayshore would not pay the bill. In the course of that conversation, according to Mrs. Ziats, who was the only witness in the Circuit Court, he inquired whether she was going to file a claim, and then warned her: "If you do, you will be sorry. You will never work here again and probably no where around here any more." Bayshore's plant was located in Elkton, in Cecil County, where Mrs. Ziats lived. She took this statement as meaning that if she filed a claim, not only would Bayshore not employ her again, but she would be unable to obtain employment elsewhere in Elkton. The appellants challenge this interpretation, but it seems to us reasonable. On this interpretation, it obviously carries a threat of blacklisting by Bayshore and by other unspecified employers in Elkton to whom Bayshore would report the matter.

The appellee worked for two or three days after the accident and was laid off because Bayshore had completed the order on which she had been working, and it was after she had been laid off that the above telephone conversation occurred. Subsequent events shown by the testimony were thus summarized by the trial judge:

"For a period in excess of a year thereafter she called the company many times inquiring about her promised employment and on these occasions either conversed with Mr. Pinkowski or one of the secretaries. On these occasions, Mr. Pinkowski kept encouraging her in respect to her employment saying he would call her, which he never did. He also repeated his threat, not to hire her if she filed a compensation

claim, on several of these occasions. She kept inquiring about employment even though she was disabled from work during part of this time, because she wanted to work and kept hoping each day her condition would improve. Sometime after the lapse of more than a year, without employment by Bayshore Industries she became employed by another company; the exact time of which is not established. 'Way over a year' and within a year and a half after the accident, the exact time is not established, her eye condition worsened and she decided to 'take a chance' and find out about filing a claim. Accordingly, she called a lawyer in Elkton, whose name she learned from a telephone directory whom she did not know, and inquired about the matter. He advised her she had waited too long and could not collect on her claim. Thereafter she consulted another attorney of Elkton, Mr. Mackie, who represented her when her claim was formally filed with the Commission on October 14, 1959."

The appellants challenge some of the findings of fact of the trial judge largely on the basis of inconsistencies between the appellee's testimony in court and her testimony before the Commission. Bearing in mind the weight to be given to the trial judge's findings where credibility is involved, we could scarcely find him to be clearly in error in accepting her testimony as given in court, including that given on cross-examination based upon her prior testimony. Furthermore, the discrepancies do not impress us as very substantial, with one possible exception. This is with regard to whether the threat made in October, 1957, was later repeated by Pinkowski. As to that matter, we cannot say that the trial judge was in error, nor do we think that threat had to be repeated in order to maintain its vitality, at least as long as the appellee was seeking re-employment by Bayshore. That, we think it fairly inferable, was up to a time within a year of the filing of her claim.

The trial court also found that Mr. Pinkowski had apparent authority, even though he may have lacked actual authority, to

speak for the employer in making the statement quoted and in other dealings with the appellee. On this matter, the trial court found that the appellee's exclusive dealings with Pinkowski in obtaining employment with Bayshore, in the handling of her physician's bill, and with regard to all statements, threats and promises concerning her future employment with Bayshore, were of such a nature and were had under such circumstances as to cause the appellee, acting as a reasonably prudent person, to deal with him at all times and in good faith in reliance upon his apparent authority. The trial court further found in substance that Bayshore's conduct in permitting Pinkowski to interview and hire prospective employees and otherwise to deal with its employees in all matters pertaining to their employment was such as would influence persons dealing with him to believe that he had authority to represent Bayshore in such matters, that the appellee had relied upon such apparent authority, and that if actual authority were in fact lacking the appellee had been misled by Pinkowski's apparent authority, and that she would be injured if Bayshore were permitted to rely upon actual lack of authority of Pinkowski in respect of hiring prospective employees (if actual authority were lacking). He concluded that Bayshore was estopped to deny the actual authority of Pinkowski.

We think that the evidence was sufficient to show that Pinkowski had apparent authority to speak for Bayshore in matters pertaining to employment. On the testimony in this case we also think that his apparent authority to speak for Bayshore in that matter cannot be separated from his apparent authority to speak in compensation matters and so to make the threat relating to the appellee's claim for compensation, for one was directly tied to the other. That threat was, in substance, if you make a claim, you will be sorry and you will never work here again and probably nowhere around here. An employee could hardly be expected to differentiate between Pinkowski's power as to employment matters and his power as to compensation matters when the two were so closely connected as the testimony indicates. Though the evidence of apparent authority is not so strong here as it was in the case of *Summit Timber Products Co., Inc. v. McKenzie,* 203 Md. 41, 97 A. 2d 910,

we think that it is sufficient to bring this case within the rule of the *Summit Timber* case. The instant case is clearly distinguishable from such cases as *West Virginia Pulp & Paper Co. v. Morton,* 185 Md. 623, 45 A. 2d 725, and *Champness v. Glenn L. Martin Co.,* 193 Md. 188, 66 A. 2d 396, in which the claimant knew or should have known that the person upon whose assurance he sought to rely was not authorized to bind the employer as to filing claims for employees in compensation matters. Here there is no suggestion that different departments or personnel in Bayshore handled employment matters and compensation matters. The *Champness* case recognized the rule of apparent authority applied in *Summit Timber* by stating that the agent "must have the authority to represent the employer in the specific matter of filing claims, or he must be in a position which would reasonably result in an inference that he has such authority." (193 Md. at 193-94.) The latter clause is applicable here. This language was also quoted in *Patapsco & Back Rivers R. R. Co. v. Davis,* 208 Md. 149, at 157-58, 117 A. 2d 566.

The appellants contend with force and ability that the statement attributed to Pinkowski amounts neither to fraud nor to an estoppel. As to each branch of this contention the appellants rely heavily upon the absence of misrepresentation. Their argument overlooks the evasion of the Workmen's Compensation Act which would be accomplished if the contentions were to prevail.

If Bayshore had made it a condition of the appellee's original employment that if she were injured in an accident arising out of and in the course of her employment, she could not file a claim under the Workmen's Compensation Act, or that she could not do so without Bayshore's consent, such a condition would clearly have been void under § 51 of the Act (Art. 101 of the 1957 Code). An effort to prevent the filing of a claim for an injury which has occurred by a threat to refuse future employment is plainly against the public policy reflected by § 51, even though it may not be within the literal prohibition of that section. § 63 of the Act bars the application of the rule that statutes in derogation of the common law are to be

strictly construed and provides that the Article is to be so interpreted and construed as to effectuate its general purpose. The Act is essentially social legislation and the provisions thereof are to be liberally construed. *Bethlehem-Fairfield Shipyard, Inc. v. Rosenthal,* 185 Md. 416, 425, 45 A. 2d 79. This rule of liberal construction was explicitly applied to the phrase "facts and circumstances amounting to an estoppel" contained in § 39(c) in *Parks & Hull Appliance Corp. v. Reimsnyder,* 177 Md. 280, at 296, 9 A. 2d 648.

The threat that Bayshore would bar the appellee from future employment is similar to a threat to cause the loss of present employment. A threat of the latter type has been held in suits for personal injuries to amount to duress sufficient to avoid a release by an employee in favor of an employer. *Holmes v. Industrial Cotton Mills Co.,* 64 F. Supp. 20 (D. C., S. C.) (present employer) ; *Wise v. Midtown Motors* (Minn.), 42 N. W. 2d 404 (threat by present employer, release to former employer) ; *Perkins Oil Co. of Delaware v. Fitzgerald* (Ark.), 121 S. W. 2d 877 (threat to discharge the injured employee's stepfather, then the only breadwinner in the family, and to blacklist him with other employers in a like business) ; and *Huddleston v. Ingersoll Co.* (Colo.), 123 P. 2d 1016 (threat to discharge another). See also annotation, 20 A.L.R. 2d 743, at 751. In *Red Rover Copper Co. v. Industrial Comm.* (Ariz.), 118 P. 2d 1102, in which a statute gave the employee an election to accept or reject the benefits of the Workmen's Compensation Act, it was held that "to make a rejection of the Act a condition precedent to employment is coercion, and no rejection thus obtained is, or can be made, valid."

We think that the words "facts and circumstances amounting to an estoppel" as used in § 39 of our Act are not to be interpreted narrowly. We also think that the threat to which the employer was found to have resorted through Pinkowski's statements, coupled, as it was, with holding out hope of reemployment to the appellee, amounted to economic coercion such as existed in the *Red Rover Copper* case. To permit such coercion to be effective would be plainly contrary to the public policy of the Act, would in effect subvert its purpose, and would amount to clearly inequitable conduct. The employer

should be estopped from profiting by such conduct. If there had been a mere repudiation by Bayshore of any obligation under the Act, a different situation might well have been presented. Here there was the threat of blacklisting and woven into it was the prospect or hope (even if not an actual promise) of future re-employment, as attested by the appellee's efforts for more than a year to get back a job with Bayshore. These two factors combined to prevent the appellee from filing her claim as long as this inducement was apparently held out by the employer and relied upon by the appellee, and this continued to operate until less than a year before she filed her claim.

This Court has repeatedly approved Pomeroy's definition of equitable estoppel (now stated in 3 Pomeroy's *Equity Jurisprudence* (5th Ed.), § 804, p. 189), which reads as follows:

> "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

Compensation cases construing § 39(c) of the Act which have adopted it include *Parks & Hull Appliance Corp. v. Reimsnyder, supra; West Virginia Pulp & Paper Co. v. Morton, supra; Webb v. Johnson,* 195 Md. 587, 74 A. 2d 7; and *Patapsco & Back Rivers R.R. Co. v. Davis, supra.*

In *Pomeroy, op. cit. supra,* § 805, at p. 191, the author states six elements of an equitable estoppel, but he does so with the caution that "[i]t would be unsafe and misleading to rely on these general requisites as applicable to every case, without examining the instances in which they have been modified or limited." In § 802, at p. 180, of the same work it is stated that the "object [of equitable estoppel] is to prevent the unconscientious and inequitable assertion or enforcement of claims or

rights which might have existed or been enforceable by other rules of the law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel."

Citing the above section of *Pomeroy* and other authorities, this Court said in *Rody v. Doyle,* 181 Md. 195, at 200-201, 29 A. 2d 290: "An equitable estoppel operates to prevent 'a party from asserting his rights under a general technical rule of law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth.'" This statement is repeated in *Wright v. Wagner,* 182 Md. 483, at 492, 34 A. 2d 441. See also *Maryland Casualty Co. v. Gates,* 290 F. 65, cert. denied 263 U.S. 708. In *Price v. Adalman,* 183 Md. 320, at 325-26, 37 A. 2d 877 (a contract case), this Court stated broadly that "[w]hen a party voluntarily so conducts himself that another party in good faith relies upon his conduct, and is thereby put in a worse position, then the first party is estopped from asserting rights which might otherwise exist to keep the second party from his remedy."

Among the cases cited in *Price v. Adalman, supra,* are *Rodgers v. John,* 131 Md. 455, 102 A. 549; *Pearre v. Grossnickle,* 139 Md. 1, 114 A. 725; *Benson v. Borden,* 174 Md. 202, 198 A. 419. In each of these the rule was recognized that whether the doctrine of equitable estoppel should or should not be applied depends upon the facts and circumstances of each particular case, and unless the party against whom the doctrine has been invoked has been guilty of some unconscientious, inequitable, or fraudulent act of commission or omission, upon which another has relied and been misled to his injury, the doctrine will not be applied. The clear meaning is that if the converse situation exists, the doctrine may be applied. Here we think there was a converse situation in which Bayshore, acting through Pinkowski, was guilty of unconscientious and inequitable conduct. See also *Bethlehem-Sparrows Point Shipyard, Inc. v. Glass,* 188 Md. 501, at 507, 53 A. 2d 405, in which in holding that there was no estoppel, this Court pointed out the absence of any contention that the employer "induced the claim-

ant not to file his claim in time, by fraud or artifice." Cf. *Gould v. Transamerican Associates,* 224 Md. 285, 167 A. 2d 905.

The Maryland case which is perhaps closest to the instant case insofar as estoppel to plead limitations is concerned is *Chandlee v. Shockley,* 219 Md. 493, 150 A. 2d 438. In that case the plaintiff had been injured in an automobile collision in which the driver of the other car, who was the defendant's decedent, had been killed. Suit was not filed against the administratrix until more than six months after her qualification, and the administratrix demurred to the declaration on the ground of limitations under § 112 of Article 93 of the Code (1957). This Court held that the time limitation contained in that section was a limitation on the right and not merely on the remedy and hence that the defense could be raised by demurrer. This Court further held (over the dissent of two Judges) that the allegations of the amended declaration as supplemented by a bill of particulars were sufficient to estop the administratrix from asserting the defense of limitations. These allegations were, in brief, that a representative of the decedent's insurance company, who was authorized to act for the administratrix, had assured the plaintiff's counsel that if settlement efforts failed, the defense of limitations would not be pleaded. § 112 of Article 93 contained no proviso similar to that contained in § 39(c) of Article 101 of the Code (1957)—a difference which was pointed out in the dissenting opinion. The majority relied heavily upon *Scarborough v. Atlantic Coast Line R. Co.,* 178 F. 2d 253 (C. A., 4th) (cert. den. 339 U. S. 919), in which the filing of suit under the Federal Employers' Liability Act was delayed beyond the statutory period because of erroneous information given by a railroad claim agent as to the time within which suit could be brought. This Court quoted from *Scarborough* a passage containing this statement: "The ancient maxim that no one should profit by his own conscious wrong is too deeply imbedded in the framework of our law to be set aside by a legalistic distinction between the closely related types of statutes of limitations." That ancient maxim is also recognized as the law of this State in *Price v. Hitaffer,* 164 Md. 505, 165 A. 470; and *Chase v. Jenifer,* 219 Md. 564, 150 A. 2d 251.

In other jurisdictions an estoppel has been applied when one party has, by words or conduct, induced the other to refrain from bringing suit until the ordinary type of statute of limitations affecting the remedy has run. *Howard v. West Jersey & S. S. R. Co.* (N. J. Eq.), 141 A. 755, and *McLearn v. Hill* (Mass.), 177 N. E. 617.

There are some cases in other states which make a distinction between statements designed to cause delay in filing suit until after limitations have run and statements designed to prevent the bringing of any suit at all. See *McKay v. McCarthy* (Iowa), 123 N. W. 755, and *Lippitt v. Ashley* (Conn.), 94 A. 995. We do not find the grounds for this distinction persuasive, at least in a case such as the present where imposition is involved, because the practical result is the same whether the effort is to delay suit for a limited time only or to talk the plaintiff out of bringing suit at all.

In most of the compensation cases in this State in which estoppel has been found, there has been some representation by the employer that a claim had been filed or that he would see that one would be filed for the employee. In *Harrison v. McCarty,* 178 Md. 377, 13 A. 2d 544, there was a rather general statement by the employer which the employee took as being to that effect (though the employer testified that he meant only that he would file the report which he was bound to file) and the employee's delay was also attributable to the employer having told the employee to follow the instructions of a certain doctor and the doctor had told him that it would probably be a year before he could know the extent of his injury. This Court commented on the absence of any suspicion of fraud being intended or attempted to induce the employee to refrain from filing his claim within the proper time, but nonetheless found an estoppel. In *Patapsco & Back Rivers R. R. Co. v. Davis, supra,* there appears to have been no express representation that a claim had been or would be filed, but it was held than an estoppel could be found nonetheless largely on the basis of what had been said by the employer at a conference held long after the injury when it had in its possession a statement of claim made out shortly after the claimant's injury showing a compensable injury, and on the basis of the

understanding (or justifiable misunderstanding) thereof by an illiterate claimant.

*Harrison v. McCarty, supra,* did not present any wilful or deliberate unconscientious or inequitable conduct on the part of the employer, and, indeed, we think that it presented no inequitable conduct at all. The *Patapsco & Back Rivers R. R.* case presented no express representation or misrepresentation and if the conduct of the employer were inequitable, it was certainly far less so than the conduct of the employer in this case.

Here we have a deliberate attempt to evade and defeat the purpose of the Act made effective and continued in effect by a statement or representation of the employer which combined a threat and an inducement upon which the claimant relied. Such conduct, we think, falls within the meaning of "facts and circumstances amounting to an estoppel," as used in § 39(c) of the Act. The claimant did file her claim within the period of one year thereafter, and hence her claim was not barred by limitations. The insurance carrier which is the real party in interest here on the appellants' side of the controversy (Bayshore having apparently ceased to exist) is bound by the employer's conduct. *Harrison v. McCarty, supra,* 178 Md. at 381.

*Order affirmed; costs to be paid*
*by the appellants.*