MARSHALL J. BURDOCK *v.* KAISER ALUMINUM
& CHEMICAL CORPORATION ET AL.

[No. 924, September Term, 1973.]

*Decided September 18, 1974.*

The cause was argued before THOMPSON, MOORE and LOWE,
JJ.

*Ronald C. Brubaker* and *Louis A. Fatkin* for appellant.

*C. William Gilchrist* for appellees.

MOORE, J., delivered the opinion of the Court.

· This appeal involves the applicability of certain provisions of the Workmen's Compensation Act which may be invoked in Maryland to bar a claim for workmen's compensation based upon an occupational disease (here, silicosis).

The Medical Board for Occupational Diseases on October 31, 1972 conducted a hearing at Cumberland, Maryland on the claim of appellant, a clay miner who retired in 1968 after 43 years of mine labor. On April 25, 1973 the Board made findings on 19 of 22 separate issues, referring the remaining three issues to the Workmen's Compensation Commission. On September 17, 1973, the Commission, upon review of the claim, found "on Issue 19 that the claim is barred by the Statute of Limitations (see medical report dated June 15, 1963 and Myersdale Community Hospital [sic] May 5, 1972)." [1] The Commission also ordered that the case be referred back "to the Medical Board of Occupational Diseases to take additional testimony on Issues 5 and 9; and that the subsequent injury fund be made a necessary party as requested by the claimant on October 2, 1972." [2]

There were no further proceedings, however, before the Medical Board. The claimant entered an appeal, pursuant to Maryland Rule B2, to the Circuit Court for Allegany County and thereafter filed a motion for summary judgment on the ground that the Commission erred in its finding that the claim was barred by the Statute of Limitations. The

---

1. Issue 19 was: "If the claimant contracted an occupational disease, is his claim barred by the Statute of Limitations, as stated in Article 101, § 26? " As noted *infra,* the above parenthetical statement constituted the full extent of the Commission's "findings." The two other issues referred by the Board to the Commission were Issues 20 and 21 concerning whether or not the employer and the insurer had been prejudiced by appellant's failure to give notice of his disease within the period prescribed.

2. Issue 5: "When did the claimant first become disabled? Issue 9: "For how long a period has the claimant been suffering from this disease? " The finding of the Board as to each issue was: "1970," no month being specified.

employer and self-insurer, Kaiser Aluminum and Chemical Corporation, also moved for summary judgment on the ground that there was legally sufficient evidence before the Commission concerning the statute of limitations to support its decision. In an opinion and order filed on January 1, 1974 the motion of the claimant-appellant was denied and that of the employer and insurer-appellee was granted.

## The Statutory Framework

Workmen's compensation for disability or death resulting from occupational disease in extra-hazardous employment is governed by the Workmen's Compensation Act, Code (1957, 1964 Repl. Vol.) Art. 101, §§ 21 to 35. Such disease first became compensable in Maryland by ch. 465 of the Acts of 1939.[3] Silicosis, for which appellant made application for compensation for permanent total disability, is an occupational disease. *State of Maryland, to the use of Sara Payne Wilson v. The North East Fire Brick Company,* 180 Md. 367, 24 A. 2d 287 (1942). Writing for the Court of Appeals in *Johnstown Coal & Coke Co. v. Dishong,* 198 Md. 467, 84 A. 2d 847 (1951), Judge Delaplaine explained silicosis in the following terms:

". . . We must recognize the fact that silicosis is a pneumoconiosis, for the development of which the inhalation of particles of silicon dioxide is necessary over a long period of time. Usually it is not until after an exposure of about fifteen years to the sand dust, when sufficient lung has been destroyed, that symptoms of air deficiency appear with shortness of breath upon exertion. As the disease progresses to an extreme degree, even slight exertion brings about more severe attacks of breathlessness, and manual labor is then difficult. Finally no work at all may be performed, resistance to infection is decreased, and usually some other disease, such as tuberculosis or pneumonia, is the cause of death."

3. In 1951 Maryland changed from a schedule-type coverage of occupational diseases to a general-type coverage. Ch. 287-297, Acts of 1951.

The disease is defined as follows in Art. 101, § 67 (14):

> " 'Silicosis' shall mean the characteristic fibrotic condition of the lungs caused by the inhalation of silicon dioxide (Si $O_2$) dust."

Occupational disease claims are, under the statute, subject to investigation and hearing in the first instance by a Medical Board created by Art. 101, § 27. The Board consists of three physicians, all of whom are required to have had at least five years' practice, two of them in the diagnosis, treatment and care of industrial diseases and the third is required to be "especially trained" in roentgenology. Any one member has the authority to hear any issues referred to the board and the determination of the issue by two members is deemed to be the determination by the board. The specific functions of the Board are set forth in § 28 which provides, in pertinent part:

> "The Workmen's Compensation Commission shall refer every claim for compensation for an occupational disease to the medical board for investigation, hearing and report, excepting, however, such cases wherein there are not controverted medical issues. No award shall be made in any such case until the medical board shall have duly investigated and heard the case and made its report and its decisions with respect to all medical questions at issue. *The date of disablement, if in dispute, shall be deemed a medical question."* (Emphasis added.) [4]

The same section also requires the Board to make a written report on controverted medical questions and the date of disablement. Thus:

---

4. "Disablement" is defined in § 67(15) as follows:

" 'Disablement,' as used in §§ 22, 27, 28 and 29 of this article means the event of an employee's becoming actually incapacitated, either partly or totally, because of an occupational disease, from performing his work in the last occupation in which exposed to the hazards of such disease . . . ."

"The medical board shall, as soon as practicable after it has completed its consideration of the case, report in writing its findings and conclusions on every medical question in controversy. *If the date of disablement is controverted and cannot be exactly fixed scientifically, the medical board shall fix the most probable date, having regard to all the circumstances of the case.* The medical board shall also include in its report a statement indicating the physician or physicians, if any, who appeared before it, and what, if any, medical reports and X-rays were considered by it." (Emphasis added.)

After the hearing before the Medical Board and the filing with the Commission of the record and transcript, any aggrieved party may file within 30 days a petition with the Commission requesting a review of the proceedings. Art. 101, § 29. If no such petition is filed, the Commission "shall render its decision or award which shall conform to the findings in such report and the decision of the Medical Board as to medical questions." A restriction on review of facts by the court is also contained in § 29:

". . . In any hearing, as provided for in §§ 22-30 of this article, held by the Workmen's Compensation Commission in any case to determine any controversial questions, no finding of fact by the Workmen's Compensation Commission shall be subject to be reviewed or be set aside, reversed or modified. (An. Code, 1951, § 28; 1939, § 42; 1939, ch. 465, § 32-I; 1945, ch. 528; 1951, ch. 287, § 29)."

There is thus a correlation between Art. 101, § 29 and Art. 101, § 56 which relates to "appeals to local courts" concerning the finality of the determinations of the administrative body. Section 56 provides:

"Upon the hearing of such an appeal the court shall, upon motion . . ., submit to a jury any question of fact involved in such case *provided, however, that in all appeals in which occupational*

*diseases are involved, the findings of fact by the Commission shall be final and not subject to review or modification by the court or be submitted to a jury."* (Emphasis added.)

The intent of §§ 29 and 56 was explained by Judge Digges writing for the Court of Appeals in *Maryland Bureau of Mines v. Powers*, 258 Md. 379, 265 A. 2d 860 (1970):

"The intent of these provisions is to finalize the determinations of the administrative body which the legislature has deemed most qualified to make medical and other factual conclusions in these types of cases. Note, 13 Md. L. Rev. 337 (1953). The legislative judgment as to where finality should rest has fluctuated; between 1951 and 1955 the findings of the Medical Board were by statute presumed to be correct, and unreviewable if supported by legally sufficient evidence. *Big Savage Ref. Corp. v. Geary*, 209 Md. 362, 121 A. 2d 212 (1956). Except for this period, finality has been vested in the Commission's findings from the time occupational diseases were first included in the coverage of Article 101 in 1939 until the present time. This means the pre-1951 law on the subject and the post-1955 law are the same. *Martin Marietta v. Leius*, 237 Md. 217, 205 A. 2d 792 (1965); *Beth. Spar. Pt. Shipyard v. Bishop*, 189 Md. 147, 55 A. 2d 507 (1947)." [5]

The role of the medical board *vis-a-vis* the Workmen's Compensation Commission was explained by Chief Judge Brune in *Duncan v. McNitt Coal Co.*, 212 Md. 386, 129 A. 2d 523 (1957) (212 Md. at 401):

"The Medical Board's position is not precisely that of an administrative agency empowered to reach

---

[5]. The legislative changes here referred to are traced in the opinion of Chief Judge Brune in Duncan v. McNitt Coal Co., 212 Md. 386 at 394; and by Judge Hammond (later Chief Judge) in Martin Marietta Corp. v. Leius, 237 Md. 217, 205 A. 2d 792 (1965).

ultimate conclusions of fact, yet it is certainly no less than that of a trial examiner in administrative proceedings or of a master in equity or other court proceedings. Its views stand or fall on its report as submitted to the Commission and the Board's report must be made on the basis of the evidence before it and its expert interpretation thereof."

And, as the Court stated in *Bethlehem-Sparrows Point Shipyard, Inc. v. Bishop*, 189 Md. 147, 55 A. 2d 507 (1947): "Finality, in so far as the legislature can make final the decision of an administrative tribunal, attaches to the decision of the Commission, not to the decision of the Medical Board." [6]

That the findings of the Commission in cases involving occupational diseases are not impervious to judicial scrutiny, however, was made plain in the following additional quotation from Judge Digges' opinion in *Powers*:

"In spite of the unqualified language of section 56 the findings of the Commission are not totally insulated from review by the court. We have recognized that a finding of the Commission may be reversed when it is based on an erroneous conception of the applicable law. *Gower v. Davis Coal & Coke Co.*, 197 Md. 52, 78 A. 2d 195 (1951). *Utilizing this principle our decisions have extended the power of review to the factual field because we have held '[n]otwithstanding the finality which these statutes seek to confer upon such findings of the Commission, they are subject to review if not supported by substantial or legally sufficient evidence (both terms being found in the cases), and the existence of such evidence is a question of law.'* *Duncan v. McNitt Coal Co.*, 212 Md. 386, 129 A. 2d 523 (1957); *Johnstown Coal & Coke Co. v. Dishong*,

---

6. Appellant's contention that a different rule obtains where no petition for review by the Commission is filed within 30 days of the Medical Board's findings, is considered later in this opinion.

198 Md. 467, 84 A. 2d 847 (1951)." (Emphasis added.)

To the same effect, *see Mutual Chemical Co. v. Thurston*, 222 Md. 86, 94, 158 A. 2d 899 (1960).

Compensation for an occupational disease is currently provided by Art. 101, § 23 (d), as amended in 1973. The language of the section applicable to appellant's claim filed on June 16, 1972 is contained in Chapter 151, Acts 1967, as follows:

"(d) When disability or death of an employee shall be due to silicosis, asbestosis or other pulmonary dust disease, the employer shall be liable for compensation if such disease causing such disability or death shall be due to the nature of the employment in which the hazards of such disease actually exist, and to a reasonable degree of medical certainty is attributable to his type of employment, and is actually incurred in his employment, *provided such disability or death shall occur within five (5) years after the employee shall be found to be affected by silicosis, asbestosis, or other pulmonary dust disease.*" [7] (Emphasis added.)

The above underscored language has been characterized as a "limitation statute," since it limits the employer's liability. *Johnstown Coal & Coke Co. v. Dishong, supra.* The time limitation within which the claim itself must be filed is found in Art. 101, § 26:

"If no claim for disability or death from an

---

7. The 1973 amendment, effective July 1, 1973 (ch. 671, Acts 1973), substituted "seven (7) years after the employee has knowledge that he has been" for "five (5) years after the employee shall be found to be" near the end of subsection (d) and eliminated the former second sentence in the subsection, which had been added by the 1969 amendment and which provided that the section should apply only to cases where there had been an injurious exposure for a period of ninety days subsequent to June 1, 1967.

Section 2, ch. 671, Acts 1973, provides that the act shall not apply to accidental injuries sustained or occupational disease incurred prior to July 1, 1973.

occupational disease be filed with the Workmen's Compensation Commission within two (2) years from the date of disablement or the date when the claimant first has actual knowledge such disablement was caused by his employment or death, as the case may be, the right to compensation for such disease shall be forever barred." [8]

As Judge Horney observed for the Court of Appeals in *Bethlehem Steel Company v. Carter*, 224 Md. 19, 165 A. 2d 902 (1960), "Strictly speaking the question is not one of limitations, but is one involving a statutory bar."

### The Instant Claim

Marshall J. Burdock, appellant, attended school until the fifth grade and testified before the Medical Board that he could neither read nor write. He began work as a miner in 1925 at the age of 21 and was 68 years of age when he filed his claim with the Commission on June 16, 1972. He worked at digging and drilling in the clay mines — "hard clay" and "some coal." Describing the dust caused by the drilling, he said: "It was just everything was covered over with dust . . . like your buddy was standing here, sometimes you could hardly see him." On April 26, 1968, he retired on a pension because he had "twenty-five years in" but not because of disablement.

In retirement, he had a truck which in the beginning he could load and unload. At the time of the hearing in October, 1972, he stated that he "did not have any wind," that he could no longer load or unload the truck, mow the lawn or spade the garden. He testified that he was first advised that he had silicosis on May 1, 1972 by his doctor at that time, Dr. Nathan O. Thomas of Myersdale, Pennsylvania. The Medical Board accepted this latter statement and found in

---

8. Ch. 153, Acts 1967 was applicable to this claim. The 1973 amendment [footnote 3] provides *inter alia* a 3 year period within which to file. It is undisputed on this appeal that the above quoted provisions of § 23 (d) and § 26, are applicable to appellant's claim.

response to issue 11, that Mr. Burdock "first had knowledge of the disease" in May, 1972. Other findings made by the Board on the 22 issues before it were *inter alia*: that the claimant first became disabled in 1970 (month not stated); that the date when the disease began was "unknown"; that appellant had not received treatment "specifically for silicosis"; that he had been exposed to the disease since 1925 and that he was suffering from another disease or disability (unspecified), 40% of which was due to his occupational disease.

Significantly, the Medical Board responded "yes" to Issue 15:

"If the answer to any of the preceding issues find in favor of the claimant on the Issue of an Occupational Disease, did such disease occur within five (5) years as provided in Section 23 (d) of Article 101?

But the Board's answer was "Refer to Commission" to Issue 19:

"If the claimant contracted an occupational disease, is his claim barred by the Statute of Limitations, as stated in Article 101, Sec. 26."

As stated previously, § 23 (d) is a limitation on the employer's liability, entirely separate from the 2 year limit on filing a claim. According to the provisions of § 23 (d) then in effect, disability had to occur within five years after the employee "shall be found to be affected by silicosis." While the Medical Board did find the date of disability to be 1970 (Issue 12), it did not find any date prior to 1970 when the appellant was "found to be affected by" the disease. Instead it merely concluded that the five year provision was satisfied.

*Commission's Action and Affirmance Below*

Neither the appellant nor the employer-insurer filed a petition under Art. 101, § 29 for a review of the record and

proceedings before the Medical Board.[9] The Commission's subsequent determination of the claim was stated, in pertinent part, as follows:

> "On review of the above claim by the Commission, the Commission finds on Issue 19 that the claim is barred by the Statute of Limitations (see medical report dated June 15, 1963 and Myersdale Community Hospital May 5, 1972 [sic]; . . . ."

The above cryptic and parenthetical statement represents the totality of the Commission's findings. Moreover, it did not advert to and appeared to ignore the Medical Board's finding on Issue 15 that the claim was not barred by the five year limitation of § 23 (d). Under the circumstances, we find strikingly apposite the statement of Judge Digges in *Maryland Bureau of Mines v. Powers, supra,* 258 Md. at 384-5:

> "We do desire to comment, however, that despite the explicit admonitions against inadequate and unclear findings in *General Electric v. Cannella, supra* at 132-33, and *Beechwood Coal Co. v. Lucas,* 215 Md. 248, 258, 137 A. 2d 680 (1958) *the truncated findings of the Commission leave much to be desired.* The transcript of testimony before the Medical Board may well suffice to support purely factual findings by the Commission. *Where legal questions are involved as in the statute of limitations, statements that a claim is barred without any expressed basis for that conclusion make review of such statements by the courts, even though they be entitled to make one, Gower v. Davis Coal & Coke,* 197 Md. 52, 78 A. 2d 195 (1951), *a pointless and frustrating exercise.*" (Emphasis added.)

---

9. The findings of the Medical Board on the medical questions were generally favorable to appellant and no petition on his part to the Commission as a party "aggrieved" was indicated.

When the case reached the trial court, claimant-appellant moved for summary judgment on the ground that there was no genuine dispute "as to any material fact concerning the issue of limitations" and that he was entitled to judgment as a matter of law. The court granted the motion for summary judgment of the employer-insurer based upon the proposition that there was legally sufficient evidence before the Commission concerning the issue of limitations to support its decision. In a written opinion the court stated that "[l]imitations as to the time of filing the claim start to run in an occupational disease case *from the time the employee or someone in his behalf knew or had reason to believe that he was suffering from an occupational disease. . . .*" (Emphasis added.) The court cited *Mutual Chemical Co. v. Pinckney*, 205 Md. 107, 106 A. 2d 488 (1954) and quoted the above underlined language from *Consolidation Coal Co. v. Porter*, 192 Md. 494, 64 A. 2d 715 (1949). The court did not refer to the five-year limitation contained in § 23 (d) and considered only the § 26 two-year limitation.

The trial court relied on *Pinckney* and *Porter* for the holding that the employee must file his claim within 2 years after he *or someone in his behalf* had knowledge of his condition. Both of those cases, however, dealt with the 1947 supplement version of the Code Art. 101, § 26 which provided that if the claim was not filed, "within one (1) year *from the date of disablement* or death, as the case may be, the right to compensation for such disease shall be forever barred; . . . ." (Emphasis added.) The court recognized in *Porter* that a literal application of this language would produce extremely harsh results. There, the claimant had first manifested the disease in 1944, but was not able to find out that he in fact had an occupational disease until 3 years later. The Court of Appeals recognized that the claimant had been diligent and that to measure the period of limitations from the actual date of first disability would be to "require the impossible" and unjustly deny claimant his compensation. The court thus held that the language "from the date of disablement" meant "from the time the employee

or someone in his behalf knew or had reason to believe that he was suffering from an occupational disease. . . ."

The version of § 26 which is to be applied in the instant case, however, is different from the 1947 text. The claim, under the provisions of the section here applicable, had to be filed "*within 2 years from the date of disablement or the date when the claimant first had actual knowledge that his disablement was caused by his employment, or death, as the case may be.*" The statutory requirement of "actual knowledge" by the claimant negates the *Porter* holding that if someone on his behalf had knowledge, the limitations period would start to run.[10] The trial court concluded, however:

> "In this case, there was evidence from which the Commission could have determined that the employee *or someone in his behalf* had knowledge of his condition in 1964 and, therefore, that his claim is barred by limitations." (Emphasis added.)

Notwithstanding this reliance on the old statute, upon our review of the entire record, and for the reasons hereinafter stated, we conclude that the result reached by the trial court was correct.

*Evidence Supporting Commission's Determination*

We have endeavored to make it plain that the record coming to us from the Workmen's Compensation Commission is far from satisfactory. As Chief Judge Brune stated for the Court of Appeals in *Beechwood Coal Co. v. Lucas*, 215 Md. 248, 258, 137 A. 2d 680 (1958), in the face of similar frustration:

> "*The law makes no provision for remanding the case to the Commission for the purpose of making a more understandable record.* It is not our province to weigh the evidence, and the statute (so far as it

---

**10.** The 1973 amendment (Ch. 671, Acts of 1973) substituted language to make the statutory period run from the date when "the employee *or his dependents* first has actual knowledge." (Emphasis added.)

can do so) requires the courts to accept the findings of fact of the Commission. There is, however, an implicit condition — that there must be some evidence or sufficient evidence to sustain the findings. *Bethlehem-Sparrows Point Shipyard, Inc. v. Bishop*, 189 Md. 147, 55 A. 2d 507; *Big Savage Refractories Corp. v. Geary, supra; Duncan v. McNitt Coal Co.*, 212 Md. 386, 129 A. 2d 523. (Emphasis added.)

The crucial question, therefore, is whether in this occupational disease case, there was sufficient evidence to support the Commission's findings that appellant's claim was barred by limitations. If there was such evidence, the Commission's determination is not subject to reversal. *General Electric Company v. Cannella*, 249 Md. 122, 132, 238 A. 2d 891 (1968).

We have heretofore noted that the Medical Board itself made no finding as to the date when appellant was "found to be affected." To Issue 10, "When did this disease begin? ", the Board's response was "Unknown." The evidence before the Medical Board and subsequently before the Commission, however, included highly probative evidence concerning the time of the onset of appellant's disease and his knowledge of the disease — evidence bearing upon *both* the two-year provision of § 26 and the five-year provision of § 23 (d).

First, the record contains a four-page medical report by Dr. Samuel Jacobsen, Cumberland, Maryland, dated June 15, 1963, made to appellant's employer, Kaiser Aluminum & Chemical Corporation in Oakland, California. Under the caption, "Impression," Dr. Jacobsen indicated, *inter alia,* "peribronchial thickening and hilar markings increased; " and "pulmonary insufficiency." The report further stated that a copy would be sent, at Mr. Burdock's request, to his personal physician, Dr. Rock, in Myersdale, Pennsylvania; that the results of sputum examinations would be sent to Dr. Rock and that, "[i]n addition, it will be recommended that serological tests for histoplasmosis be done."

The second document before the Commission was a report

by Myersdale Community Hospital dated May 5, 1972 when appellant was examined as an out-patient at the request of Dr. Thomas and the roentgenologist's findings included the following:

> "The lung findings are consistent with pneumoconiosis. *Comparison with previous film of April 4, 1964* shows noticeable progression of the extent and density of parenchymal nodulation." (Emphasis added.)

The x-ray of April 4, 1964 referred to in the above report was made at the same hospital to which claimant was admitted for treatment by his then physician, Dr. Glass. Appellant was, at that time, hospitalized for a period of 10 days and the diagnosis, as shown from the Myersdale Community Hospital records, was "Hypertension, essential. *Anthracosilicosis, without conglomeration.*" (Emphasis added.)

The record also contains a copy of a claim for benefits, in connection with the 1964 hospital admission, which appellant filed under the employer-appellee's policy with the New York Life Insurance Company on April 28, 1964. This claim stated that the diagnosis was, as indicated in the hospital record, "Hypertension, essential. Anthracosilicosis, without conglomeration." Appellant testified that he himself did not sign the claim, that his name was probably affixed by "somebody else." He admitted that at the time of the 1964 admission, he was having trouble with his breathing.

In addition, there is a communication from Nathan O. Thomas, M.D., appellant's physician in connection with his workmen's compensation claim, addressed to appellant's counsel under date of August 22, 1972 wherein Dr. Thomas stated:

> "A chest x-ray done in May reveals findings compatible with pneumoconiosis. *I suspect the presence of this disease since 1964 (previous x-ray)*." (Emphasis added.)

Article 101, § 67 (15) mandates that disability in cases

involving occupational disease shall be determined by the Medical Board. Here, the Medical Board found that the disability occurred in 1970.[11] Was the appellant "affected," as that term is employed in § 23 (d), in the preceding five-year period? The Medical Board found in response to Issue 9 that appellant had been "suffering" from the disease "since 1970." This is not a determination that the claimant was "found to be affected" in 1970. The documentary evidence before the Board, however, would justify a finding by the Commission that appellant was "affected" as early as June 15, 1963, the date of the report of Dr. Jacobsen and certainly no later than April 1964 when appellant's then physician, Dr. Glass, made the diagnosis of anthracosilicosis, the year 1964 being the time of the onset of the disease in the opinion of appellant's physician in 1972, Dr. Thomas. Since the disability did not occur until 1970, the five-year provision of § 23 (d) would not have been satisfied.

With respect to the two-year limitation under § 26, there was evidence that the appellant had "actual knowledge" of his disablement at the time of his hospitalization in 1964 rather than in May, 1972, as found by the Board.

It is contended by appellant that the Commission had no authority to make a finding inconsistent with the facts determined by the Medical Board. The authorities cited by appellant do not support that proposition. We recognize that Art. 101, § 29 provides, as previously stated, that if no petition for review of the Board's findings is filed with the commission within 30 days (and no such petition was filed here), the Commission shall proceed to render its decision or award "which shall *conform to the findings* in such report *and the decision* of the Medical Board *as to medical questions*." (Emphasis added.) The statute does not provide, in express terms, in such case, that the Commission is bound by the Board's findings and its decisions on medical

---

11. This, of course, was subsequent to appellant's retirement on April 26, 1968 but no issue has been raised as to whether appellant's disability was due to the nature of the employment and attributable to his type of employment. *Cf.* Mutual Chemical Co. v. Thurston, 222 Md. 86, 158 A. 2d 899 (1960).

questions.[12] At all events, however, the Board in this case did not decide but referred to the Commission itself the determination of Issue 19 as to whether appellant's claim was barred by the two-year provision of § 26. In such a situation the Commission is, of course, free to make its own findings on the issue referred to it by the Medical Board.

The evidence discussed before the Commission was legally sufficient to support a determination that appellant's claim for disability was not compensable, based upon the five-year limitation contained in § 23 (d) of Art. 101, and that the claim was barred by the two-year limitation imposed by § 26. This being so, the findings of the Commission are final as provided by Art. 101, § 56 and the judgment of the Circuit Court must be affirmed.

> *Judgment affirmed; costs to be divided between appellant and appellees.*

---

12. There may be, however, a problem of statutory interpretation of the word "conform" which should engage, for purposes of clarification, the attention of the General Assembly.