673 A.2d 762

Anthony **LOMBARDI**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 854, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

March 28, 1996.

696

Kenneth M. Berman (Berman, Sobin & Gross and Eric M. Cotts, on the brief) Gaithersburg, for Appellant.

Charles L. Frederick, Assistant County Attorney (Charles W. Thompson, Jr., County Attorney and Joann Robertson, Senior Assistant County Attorney, on the brief) Rockville, for Appellee.

Argued before CATHELL, DAVIS and HARRELL, JJ.

CATHELL, Judge.

Anthony Lombardi, appellant, was employed as a firefighter and paramedic by Montgomery County Department of Fire

and Rescue Services, appellee. In 1988, he was diagnosed with hypertension. Roughly three and one-half years later, in late 1991, an examining physician concluded that appellant's condition stemmed from his employment. He thereafter filed a claim seeking compensation under the Maryland Workers' Compensation Act (the Act). *See* Maryland Code (1991 Repl. Vol., 1995 Supp.), §§ 9–101 to 9–1201 of the Labor and Employment Article (LE). In an Order dated April 18, 1994, the Workers' Compensation Commission (the Commission) disallowed his claim, finding that it was barred by the applicable two-year statute of limitations in respect to the filing of claims with the Commission and that appellant had not sustained an occupational disease arising out of and in the course of his employment within the meaning of the Act. On appeal to the Circuit Court for Montgomery County, faced with cross-motions for summary judgment, the court granted summary judgment in favor of appellee. In this appeal from that judgment, appellant presents three questions, which we rephrase as follows:

1. Did the circuit court err when it ruled that the statute of limitations began to run when the claimant knew or should have known that his occupational disease was caused by his employment?

2. Did the circuit court err in granting summary judgment because the question of when appellant knew or should have known that his illness was caused by his employment was a question of material fact still in dispute?

3. Did the circuit court err in concluding that the statute of limitations began to run in 1988 because appellant was not actually incapacitated or disabled at that time?

Because we hold that the circuit court erred in respect to appellant's first two questions, we shall reverse the grant of summary judgment in favor of appellee and remand this case to the circuit court.

## Statement of the Facts

Appellant was employed as a firefighter and paramedic by appellee for thirteen years. As a result of an unrelated back

injury, he retired from service in April of 1988 on a disability pension. Upon his retirement, appellant was given an exit physical examination, during which no finding of an elevated or heightened blood pressure was made.

Later that same year, appellant was first diagnosed with hypertension in the course of a routine visit to his family physician. According to appellant, it was not until 1991, following a discussion with his attorney, that he realized that there could be a connection between his hypertension and his former occupation. This belief was substantiated when a Dr. Richard Schwartz thereafter reached the opinion that appellant's hypertension did, in fact, result from his work as a firefighter.

Appellant filed a claim with the Commission on September 7, 1991, more than three years after the initial diagnosis, but at approximately the same time as the rendering of Dr. Schwartz's opinion, stating that he had become disabled due to hypertension, an occupational disease, as a result of his employment as a firefighter.[1] At the subsequent hearing, held on March 21, 1994, appellant testified that it was in 1991, well after he had retired from appellee's employ, that he first realized that his hypertension was related to his former employment. By Order dated April 18, 1994, the Commission disallowed appellant's claim upon finding (1) that it was barred by the two-year statute of limitations for occupational diseases and (2) that appellant had not sustained an occupational disease arising out of and in the course of his employment within the meaning of the Act. From this determination, appellant filed a Petition for Judicial Review in the Circuit Court for Montgomery County.

---

1. Within the Act, LE § 9–503(a) serves to create a rebuttable presumption that a paid firefighter who has been diagnosed with hypertension is presumed to have a compensable occupational disease that was suffered in the line of duty. *See generally Board of County Comm'rs v. Colgan,* 274 Md. 193, 334 A.2d 89 (1975); *Montgomery County Fire Bd. v. Fisher,* 53 Md.App. 435, 454 A.2d 394, *aff'd,* 298 Md. 245, 468 A.2d 625 (1983).

Before the circuit court, appellant filed a Motion for Partial Summary Judgment, in which he sought a determination that his claim was not barred by the statute of limitations. Appellee, in response, filed a memorandum in opposition thereto and a Cross–Motion for Summary Judgment. A hearing was held on the cross motions, during which the court remarked on the similarity between this case and a case previously heard by the court.[2] The court, consistent with its ruling in that prior case, held that the statute of limitations began to run when appellant had either knowledge or reason to believe that his hypertension was job-related. The court then found that the limitations period began to run when appellant was first diagnosed with hypertension, and, because he had not filed his claim within two years from that time, his claim was barred. *See* LE § 9–711(a). Summary judgment was, accordingly, entered by the circuit court in favor of appellee. Because of the nature of its ruling, the trial court did not address the second prong of the Commission's findings.

### The Knowledge Requirement of LE § 9–711(a)(2)

Appellant avers that the circuit court erred when it ruled that the two-year statute of limitations began to run when he was first diagnosed with hypertension—*i.e.*, when he should have known that his hypertension was causally related to his former employment as a firefighter. Instead, appellant insists, the statute of limitations began to run when he first had

---

**2.** The circuit court was referring to *Frank v. Montgomery County*, Civil No. 116937 (1994), a factually similar case, in which the circuit court granted summary judgment in favor of the County roughly one month prior to its hearing on the instant matter. That order was subsequently appealed to this Court. A prior panel filed an unreported opinion, *Frank v. Montgomery County*, 105 Md.App. 796 [No. 1803, 1995 Term, *per curiam*, filed July 5, 1995], in which we reversed the grant of summary judgment in favor of the County on the ground that whether Frank had the requisite knowledge to begin the running of the statute of limitations was a question of material fact still in dispute. Appellant had sought to have the then pending *Frank* case consolidated for hearing before the circuit court with the instant case, based on their common issue. Appellee opposed consolidation, obviously preferring two bites at the apple.

actual knowledge that his disability was linked to his occupation.

Section 9–711(a) of the Act, the limitations section at issue, in relevant part, reads:

(a) *Filing claim.*—If a covered employee suffers a disablement or death as a result of an occupational disease, the covered employee . . . shall file a claim with the Commission within 2 years . . . after the date:

(1) of disablement or death; or

(2) when the covered employee . . . first had *actual knowledge that the disablement was caused by the employment.* [Emphasis added.]

In undertaking an analysis of this section, we must first set forth the principles that guide our interpretation of a statute. Our end, in this respect, is to determine the intent of the Legislature when it adopted the section now in dispute. *State v. Kennedy,* 320 Md. 749, 755, 580 A.2d 193 (1990); *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73, 517 A.2d 730 (1986). We "begin[ ] with the words of the statute" itself. *Harris v. State,* 331 Md. 137, 145, 626 A.2d 946 (1993); *Holman v. Kelly Catering, Inc.,* 334 Md. 480, 485, 639 A.2d 701 (1994); *see also State v. Bricker,* 321 Md. 86, 92, 581 A.2d 9 (1990) ("When interpreting a statute, the starting point is the wording of the relevant provisions."). In the absence of evidence to the contrary, "we assume that the words of the statute are intended to have their natural, ordinary and generally understood meaning." *Brodsky v. Brodsky,* 319 Md. 92, 98, 570 A.2d 1235 (1990); *Barr v. Barberry Bros., Inc.,* 99 Md.App. 33, 37, 635 A.2d 64 (1994). Moreover, "where statutory provisions are clear and unambiguous, no construction or clarification is needed or permitted, it being the rule that a plainly worded statute must be construed without forced or subtle interpretations designed to extend or limit the scope of its operation." *Tucker,* 308 Md. at 73, 517 A.2d 730; *Barr,* 99 Md.App. at 37–38, 635 A.2d 64; *see also Consolidated Rail Corp. v. State,* 87 Md.App. 287, 292–93, 589 A.2d 569 (1991).

■ However, "the plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body." *Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590 (1992); *Barr,* 99 Md.App. at 37, 635 A.2d 64. In this respect, "pertinent parts of the legislative language [should be read] together, giving effect to all of those parts if we can, and rendering no part of the law surplusage." *Sinai Hosp., Inc. v. Department of Employment & Training,* 309 Md. 28, 40, 522 A.2d 382 (1987); *Holman,* 334 Md. at 485, 639 A.2d 701.

■ Furthermore, in workers' compensation cases, "[a]ny uncertainty in the law should be resolved in favor of the claimant." *Victor v. Proctor & Gamble Mfg. Co.,* 318 Md. 624, 629, 569 A.2d 697 (1990). Nonetheless, while it is true that the "Act is to be construed liberally in favor of injured employees, 'this does not mean that the Act should be construed to provide for compensation beyond that authorized.' " *Subsequent Injury Fund v. Ehrman,* 89 Md.App. 741, 751, 599 A.2d 875 (1992) (quoting *Subsequent Injury Fund v. Thomas,* 275 Md. 628, 635, 342 A.2d 671 (1975)); *Barr,* 99 Md.App. at 39, 635 A.2d 64. With these precepts in mind, we turn our attention to the statutory language at issue.

■ Although we perceive the language of LE § 9–711(a)(2) to be clear and unambiguous on its face, a review of prior codifications of this section will be instructive, because "[g]enerally, a substantive amendment to an existing statute indicates an intent to change the meaning of that statute." *In re Criminal Investigation No. 1–162,* 307 Md. 674, 689, 516 A.2d 976 (1986); *Harris,* 331 Md. at 146, 626 A.2d 946; *C & R Contractors v. Wagner,* 93 Md.App. 801, 809, 614 A.2d 1035 (1992), *cert. denied,* 329 Md. 480, 620 A.2d 350 (1993).

Starting in 1947, Article 101, § 26 [3] of the Maryland Code read, in pertinent part:

---

3. Article 101 of the Maryland Code, Workmen's Compensation, was repealed by 1991 Md.Laws, Chap. 8, § 1, effective October 1, 1991. It

> If no claim for disability or death from an occupational disease be filed with the State Industrial Accident Commission [4] within one (1) year from the date of disablement or death, as the case may be, the right to compensation for such disease shall be forever barred[.] [1939 Acts, ch. 645, § 1.]

The Court of Appeals addressed this statutory language in *Consolidation Coal Co. v. Porter*, 192 Md. 494, 64 A.2d 715 (1949). There, Porter, the employee, first manifested his illness in 1944. Despite his acknowledged diligence in seeking treatment, it was not until three years later, in 1947, that he learned that he was suffering from an occupational disease resulting from his employment. Porter filed a claim for compensation immediately after learning of the connection, and it was challenged on the ground that it was not filed within the appropriate limitations period. Before the Court of Appeals, the issue was "whether the words of the statute, Article 101, Section 26, *supra*, mean that limitations start to run in occupational disease cases after the first distinct manifestation of the occupational disease to the employee or to some one in his behalf." *Id.* at 500–01, 64 A.2d 715. Finding no express knowledge requirement in the text of the statute, the Court concluded

> that the words of the statute now in question mean ... that limitations as to notice to the employer, and as to the time of filing of the claim, Article 101, Section 26, *supra*, started to run in this occupational disease case from the time the employee or some one in his behalf *knew or had reason to believe* that he was suffering from an occupational disease

---

was, thereafter, codified, in large part, without substantive change, as title 9 of the Labor & Employment Article.

4. As recounted by the Court of Appeals in *Holman v. Kelly Catering*, 334 Md. 480, 492 n. 6, 639 A.2d 701 (1994), "The State Industrial Accident Commission was the predecessor of the Workmen's Compensation Commission, which is now the State Workers' Compensation Commission. *See* Md.Code (1957, 1985 Repl.Vol.), Art. 101, § 1 ...; Md.Code (1991 Repl.Vol.), Labor & Employment Art., § 9–301...."

and that there was a causal connection between his disability and occupation. . . .

*Id.* at 506, 64 A.2d 715 (emphasis added). The Court then held that the limitations period began to run in 1947, thereby allowing the employee's claim, because, prior to that time, the employee "did not suspect or believe that he was suffering from [an] . . . occupational disease." *Id.*

In *Mutual Chem. Co. of Am. v. Pinckney*, 205 Md. 107, 106 A.2d 488 (1954), the Court was again faced with a limitations question based upon the same statutory language. There, it was uncontested that Pinckney, the employee, knew, at the time of his discharge in 1948, that his nose was troubling him and that this problem stemmed directly from the chemicals to which he had been exposed in his workplace. The employee did not become cognizant, however, of the exact nature of his malady, a perforated septum, until 1951. It was this realization that prompted him to file a claim for compensation against his former employer. Applying the standard set out in *Porter*, the Court of Appeals ruled that the employee "knew or should have known that his disability, whether permanent or temporary, was compensable" at the time he was discharged, some three years prior to the time he filed the claim. *Id.* at 116, 106 A.2d 488. The Court, reasoning that Pinckney knew both that he was having health problems and of its connection to his work three years prior to filing his claim, held that the employee's claim was barred. *Accord Dunstan v. Bethlehem Steel Co.*, 187 Md. 571, 51 A.2d 288 (1947).

In 1967, Article 101, § 26 was amended. For the first time, the Legislature included an explicit knowledge requirement in that portion of the section here at issue. In relevant part, it read:

> If no claim for disability or death from an occupational disease be filed with the Workmen's Compensation Commission within two (2) years from the date of disablement or the date when the claimant first *has actual knowledge such disablement was caused by his employment*, or death, as the case may be, the right to compensation for such disease

shall be forever barred[.]  [1967 Acts, ch. 153, § 1.]  [Emphasis added.]

Although not included in the passage quoted, the amendment did not place into separate sections the limitations periods for filing a claim with the employer and for filing a claim with the Commission.

This Court was called upon to decipher the implications of this change in the statutory language in *Burdock v. Kaiser Aluminum & Chem. Corp.*, 22 Md.App. 631, 325 A.2d 171, *cert. denied*, 272 Md. 738 (1974).  In that case, Burdock, the employee, retired from his job as a miner in 1968, after having been so employed for forty-three years.  It was not until 1972, upon being examined by a physician, however, that he realized that he was suffering from a compensable occupational disease.  The Medical Board[5] accepted his testimony on this point and found that Burdock "first had knowledge of the disease" as of the date of that examination, in mid–1972. *Id.* at 640, 325 A.2d 171.  The Board also found that Burdock "first became disabled in 1970." *Id.*  Be that as it may, the Commission, basing its decision upon an earlier medical report, found Burdock's claim to be barred for failure to file a timely claim with the Commission.  On appeal, the circuit court, relying on *Porter* and *Pinckney*, agreed; it found that the claim was barred and entered judgment in favor of the employer.  On further appeal to this Court, noting that the pertinent statutory language had changed in the interim, we found the trial court's reliance on *Porter* and *Pinckney* to be misplaced.  We stated:

The version of § 26 which is to be applied in the instant case, however, is different from the 1947 text.  The claim under the provisions of the section here applicable, had to be filed "within 2 years from the date of disablement or *the date when the claimant first had actual knowledge* that his disablement was caused by his employment...."  The stat-

---

**5.**  Until 1983, workers' compensation claims for occupational diseases were referred to a Medical Board for determination of controverted medical questions, including the nature and date of disablement.

utory requirement of "actual knowledge" by the claimant *negates the Porter holding that if someone on his behalf had knowledge, the limitations period would start to run. Id.* at 643, 325 A.2d 171 (some emphasis added, some emphasis omitted, footnote omitted). Despite the trial court's mistaken interpretation of the statutory standard, we affirmed its decision after conducting our own review of the record and determining that "there was sufficient evidence to support the Commission's findings that [Burdock's] claim was barred by limitations." *Id.* at 644, 325 A.2d 171. Specifically, "[w]ith respect to the two-year limitation under § 26, there was evidence that [Burdock] had 'actual knowledge' of his disablement at the time of his hospitalization in 1964 rather than in May, 1972, as found by the Board." *Id.* at 646, 325 A.2d 171.[6]

Turning back—or rather forward—to LE § 9–711(a), it is largely in sync with the 1967 text quoted above.[7] It acts as a bar to a claim if a covered employee does not file his or her claim with the Commission within two years after the date "when the covered employee ... first had actual knowledge that the disablement was caused by the employment." LE § 9–711(a)(2). Additionally, the statutorily prescribed periods for filing a claim with an employer and for filing a claim with the Commission, which were previously in one section, are now codified in separate sections. *See* 1991 Acts, ch. 8, § 2. Section 9–705(a) of the Act provides that written notice of a disability, as a result of an occupational disease, "shall be given to the employer by the covered employee ... within 1 year after the covered employee *knows or has reason to believe* that the covered employee has the occupational disease." (Emphasis added.) The emphasized language encom-

---

**6.** Burdock had been previously hospitalized for the same condition in 1964. A workmen's compensation claim had at that time been filed on his behalf with his employer's workmen's compensation insurance carrier.

**7.** Article 101, § 26 was again amended by 1973 Acts, ch. 671, § 1. No substantive changes relevant to the case *sub judice* were made at that time.

passes a constructive knowledge requirement. In this respect, LE § 9–705 reflects the Court of Appeals's interpretation in *Porter, supra,* 192 Md. at 506, 64 A.2d 715, while the language of LE § 9–711(a) demonstrates a clear choice, on the part of the Legislature, to go in a different direction, *i.e.,* "actual knowledge" in respect to filing claims with the Commission. As noted in *Burdock,* the language chosen to denote the knowledge required to file a claim with the Commission, which language is at issue here, was purposefully framed in terms of actual knowledge. *See* 22 Md.App. at 643, 325 A.2d 171. The substantive amendments to the statutory language show a legislative intent to change the standards in regards to the filing of claims with the Commission. In amending the statute, the Legislature expressly set out the degree of knowledge—that is, actual knowledge—required to commence the running of the statute of limitations for filing a claim with the Commission. The Legislature clearly intended to create different standards. The two requirements were intentionally codified in different sections, whereas previously they had been in the same section. Moreover, a comprehensive review of the Labor and Employment Article reveals at least five other statutory sections in which the Legislature used language denoting a constructive knowledge standard, *see, e.g.,* LE § 5–205(j) ("has reason to believe"), § 5–208(c) ("has reason to believe"), § 5–213(d) ("has reason to believe"), § 7–302(c) ("knows or should have known"), § 7–311(a) ("has reason to believe"), and two sections where the Legislature included both standards, *see, e.g.,* LE § 8–107(b) ("actual or constructive knowledge"), § 9–211 ("actual or constructive knowledge"). Thus, it is clear that the Legislature recognizes the distinctions between the two standards and uses each when it deems it appropriate to do so.[8] Accordingly, we hold

---

8. The issues presented on this appeal are limited to whether appellant filed a timely claim with the Commission. We, therefore, decline to address the conflicts, if any, between the actual knowledge requirement for filing of claims with the Commission, LE § 9–711(a), and the constructive knowledge requirement for filing of claims with an employer, LE § 9–705(a). Our review of the transcript of the Commis-

that the Legislature intended an "actual knowledge" standard in respect to the filing of claims with the Commission.

We are still left with the question of what constitutes "actual knowledge." The Act does not define the term, and, being clear and unambiguous, we are inclined to accord those words their common and ordinary meaning. In addition, we note that, in a legal context, use of the word "actual" means, *inter alia:* "Something real, in opposition to constructive or speculative.... It is used as a legal term in contradinction to [the terms] virtual or constructive...." *Black's Law Dictionary* 34 (6th ed. 1990). Thus, by phrasing the standard as one requiring actual knowledge, the Legislature explicitly departed from the past standard. The circuit court, in applying a constructive—knows or should have known—standard, applied a legal criterion in respect to the filing of claims with the Commission that has not been the law of this State since 1967. Thus, the trial court erred. In so noting, we resolve this question in favor of the claimant. *Victor, supra,* 318 Md. at 629, 569 A.2d 697.

### The Grant of Summary Judgment

Maryland Rule 2–501(a) provides, "Any party may file at any time a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." "The purpose of the summary judgment procedure is to decide whether there is an issue of fact sufficiently material to be tried, not to try the case or to resolve factual disputes." *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.,* 335 Md. 135, 144, 642 A.2d 219 (1994); *Maryland Casualty Co. v. Lorkovic,* 100 Md.App. 333, 353–55, 641 A.2d 924 (1994). It is "not intended to substitute for a trial but merely provides a mechanism for determination of whether there exist material facts in dispute requiring a trial."

---

sion's hearing failed to disclose an instance where appellee raised such an objection below nor has it been raised before the trial court or before this Court and, thereby, appellee waived any issue in this regard.

*Lorkovic,* 100 Md.App. at 354, 641 A.2d 924. When ruling on a motion for summary judgment, Maryland Rule 2–501(e) provides that the trial court shall render judgment "if the motion and response show that there is no genuine dispute as to any material fact."

"When the moving party has provided the court with sufficient grounds for summary judgment, the opposing party must demonstrate that there is a genuine dispute of material fact by presenting facts that would be admissible in evidence." *Gross v. Sussex, Inc.,* 332 Md. 247, 255, 630 A.2d 1156 (1993); *Miller v. Fairchild Indus.,* 97 Md.App. 324, 340, 629 A.2d 1293, *cert. denied,* 333 Md. 172, 634 A.2d 46 (1993). When a court is considering a motion for summary judgment, "[a]ll inferences must be resolved against the moving party," even when the underlying facts are undisputed. *Berkey v. Delia,* 287 Md. 302, 304–05, 413 A.2d 170 (1980); *Hartford,* 335 Md. at 145, 642 A.2d 219. The review of the grant of summary judgment, therefore, involves the determination of whether a dispute of material fact indeed exists, *Gross,* 332 Md. at 255, 630 A.2d 1156, and "whether the trial court was legally correct," *Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 592, 578 A.2d 1202 (1990).

In the case *sub judice,* appellant claims that the circuit court erred in granting summary judgment in favor of appellee because the question of whether appellant had actual knowledge is a material fact still in dispute. For our purposes, summary judgment in favor of appellee would only have been appropriate if we were to conclude that no reasonable fact finder could have failed to find that appellant had actual knowledge—as that term is used in LE § 9–711—that his hypertension was causally related to his former occupation at the time it was first diagnosed in 1988. According to appellant's testimony before the Commission, he did not suspect or believe that he was suffering from a compensable occupational disease until 1991. Drawing all inferences in his favor, we hold that reasonable minds could have differed as to when appellant had the requisite knowledge. Disposing of the issue

by way of summary judgment was, therefore, completely inappropriate, and the trial court erred in ruling that, as a matter of law, appellant's claim was barred by the statute of limitations. We explain further.

Generally, the question of when a cause of action accrues is one that is properly decided by the court. *Poffenberger v. Risser*, 290 Md. 631, 633, 431 A.2d 677 (1981). There are, however, aspects to limitations defenses, most notably when the defense hinges upon a question of fact, which are not properly decided by the court and are better suited for a jury. *O'Hara v. Kovens*, 305 Md. 280, 299, 503 A.2d 1313 (1986); *Morris v. Osmose Wood Preserving*, 99 Md.App. 646, 664, 639 A.2d 147 (1994), *aff'd in part and rev'd in part*, 340 Md. 519, 667 A.2d 624 (1995). "Depending upon the nature of the assertions being made with respect to the limitations plea, th[e] determination [of whether the action is barred] may be solely one of law, solely one of fact or one of law and fact." *Poffenberger*, 290 Md. at 634, 431 A.2d 677.

In *Poffenberger*, Poffenberger acquired a parcel of land that was subject to a number of restrictions that were recorded on the plat. Following the purchase, he contracted with a builder for the construction of a home. The building was completed in 1972, and the family moved in. Four years later, it was discovered that the house violated the setback requirements. The homeowner, thereafter, brought a negligence and breach of contract action against the builder. Finding that the suit was barred by the applicable three-year statute of limitations, the circuit court entered summary judgment in favor of the builder. 290 Md. at 633, 431 A.2d 677. On appeal to this Court, we affirmed the grant, finding that the homeowner had constructive knowledge of the setback requirement from land records, and, thus, the suit was untimely filed. *Poffenberger v. Risser*, 46 Md.App. 600, 604–05, 421 A.2d 90 (1980), *rev'd*, 290 Md. 631, 431 A.2d 677 (1981). The Court of Appeals held that constructive knowledge was insufficient to start the running of the statute. In vacating the grant of summary judgment, the Court concluded, referring to when the homeowner

had notice that his house violated the setback requirements, that "there are factual disputes which must be resolved before this litigation may be properly concluded." 290 Md. at 632, 431 A.2d 677.

In *O'Hara*, 305 Md. 280, 503 A.2d 1313, an action based upon securities fraud, the sellers of stock brought suit against the buyers to recover for an alleged fraud. The circuit court, on motion for summary judgment, found that the action was barred by the statute of limitations. Holding that the question of when the sellers were placed on notice of the fraud was a question of fact, the Court of Appeals reversed. *Id.* at 295, 304, 503 A.2d 1313. In a footnote, the Court quoted with approval a portion of our *Poffenberger* opinion, wherein we stated:

> [T]he factual nuances of the case, susceptible to varying interpretations to which that standard must be applied, are questions for a jury, subject to instructions of the court as to what in law is sufficient to constitute a bar or to take the case out of the statute.

*O'Hara*, 305 Md. at 299–300 n. 8, 503 A.2d 1313 (quoting *Poffenberger*, 46 Md.App. at 604–05, 421 A.2d 90); *see Baysinger v. Schmid Prods. Co.*, 307 Md. 361, 367, 514 A.2d 1 (1986) (holding summary judgment was improper because the issue of whether a reasonably prudent person would have undertaken a more diligent investigation was "a matter about which reasonable minds could differ"). To the contrary, in *Bennett v. Baskin & Sears*, 77 Md.App. 56, 549 A.2d 393 (1988), a professional malpractice action, we found a grant of summary judgment on limitations grounds to be proper where no material facts were in dispute. *See also Russo v. Ascher*, 76 Md.App. 465, 467, 545 A.2d 714 (1988). *See generally Pennwalt Corp. v. Nasios*, 314 Md. 433, 550 A.2d 1155 (1988).

Hence, our determination of the propriety of a grant of summary judgment on limitations grounds is the same as our review of such a grant based on any other ground—that is, when there is a material fact still in dispute on the issue of when the statute of limitations begins to run, the grant of

summary judgment is not proper. Before the circuit court, attached to appellant's Motion for Partial Summary Judgment, were four exhibits. Chief among them is appellant's sworn testimony before the Commission, in which he stated that he did not know that his hypertension related to his former employment until he was so informed by Dr. Schwartz. Corroborating this is the report from Dr. Schwartz, dated November 27, 1991. In opposition to *appellant*'s Partial Motion for Summary Judgment, *appellee* even argued: "In any event, discovery in this case is ongoing and undoubtedly will disclose additional evidence which further demonstrates that a material dispute exists as to when [appellant] knew of the alleged casual relationship between his hypertension and his former employment as a paramedic." As appellee appears to have conceded below, the question of when appellant had the requisite knowledge that his hypertension stemmed from his work as a firefighter is a material fact over which reasonable minds could differ. The resolution of this question, therefore, was not proper on motion for summary judgment.

Given our resolution of appellant's first two questions, we decline to address his third question.

**JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.**